BROWN–FORMAN DISTILLERS COR-
PORATION et al., Respondents,

v.

James F. McHENRY et al., Appellants,

Missouri Wine and Spirits Association,
Inc., Intervenor-Appellant.

No. 60052.

Supreme Court of Missouri,
En Banc.

April 24, 1978.

Rehearing Denied June 15, 1978.

John D. Ashcroft, Atty. Gen., Terry C.
Allen, Asst. Atty. Gen., Jefferson City,
James F. McHenry, Pros. Atty., Jefferson
City, for appellants.

Cullen Coil, Jefferson City, for respon-
dents.

John H. Hendren, Alex Bartlett, Hendren
& Andrae, Jefferson City, for intervenor-
appellant.

HENLEY, Judge.

This is an appeal from a judgment and
decree declaring unconstitutional parts of
House Bill No. 810 enacted by the 78th
General Assembly, First Regular Session,
1975,[1] and enjoining permanently the en-
forcement thereof.

By their petition, Brown-Forman Distill-
ers Corporation, et al.[2] (plaintiffs) sought
(1) a judgment declaring House Bill 810
unconstitutional and void because it violat-
ed Mo.Const. Art. III, §§ 21 and 23, in that
(a) contrary to § 21, the bill was "so amend-
ed in its passage * * * as to change its
original purposes";[3] and (b) contrary to
§ 23, the bill did not contain "one subject
* * * clearly expressed in its title
* * * ";[4] and (2) a decree enjoining
James F. McHenry, as prosecuting attorney
of Cole county, et al.[5] (defendants) from
enforcing provisions of § 2[6] of House Bill
810, the violation of which is declared by

1. Laws of Mo., 1975, p. 381; §§ 407.400 to
407.420, RSMo Supp. 1975.

2. Heublein, Inc.; National Distillers and Chemi-
cal Corporation; Somerset Importers, Ltd.; Jo-
seph E. Seagram & Sons, Inc.; and Hiram
Walker Incorporated.

3. Section 21 provides, in part: "No law shall be
passed except by bill, and no bill shall be so
amended in its passage through either house as
to change its original purpose."

4. Section 23 provides, in part: "No bill shall
contain more than one subject which shall be
clearly expressed in its title * * *."

5. John C. Danforth, Attorney General of Mis-
souri and Robert G. Stewart, Supervisor of
Liquor Control.

6. Section 407.405, RSMo Supp. 1975.

§ 6 [7] to be a felony punishable by a fine or imprisonment or both. Missouri Wine and Spirits Association, Inc. (intervenor), with leave, intervened as a party defendant, filed answer, and has filed a separate brief on appeal. As indicated, the trial court granted the relief sought by plaintiffs. More specifically, the parts of House Bill 810 declared unconstitutional are a part of § 1(6) [8] and all of § 4,[9] both of which were added to the bill by an amendment [10] in the Senate. These parts, declared to be severable from the remainder of the law passed by the bill, were severed and the remainder of the law left intact.

Plaintiffs are foreign corporations licensed as distillers or suppliers authorized to solicit orders for intoxicating liquor from licensed spirituous liquor and wine wholesalers in Missouri, and each does solicit orders from wholesalers in Missouri and ships such liquor from outside to wholesalers in this state. They have contracts or agreements with liquor wholesalers that are terminable at will. These agreements provide for their termination by either party without cause or notice, or without cause but with notice of termination, or without right of renewal and early termination for cause. None of the liquor wholesalers are made parties-defendant, but intervenor, a trade association of such wholesalers, represents the interests of those who are members of the association. Under the law (§§ 407.400 to 407.420, supra), as passed by the general assembly in the form of House Bill 810, franchise agreements in the liquor industry may *not* be terminated at will.

Chapter 407, RSMo, relating to certain merchandising practices, was enacted in 1967. Laws of Mo., 1967, p. 607; §§ 407.010 to 407.130, RSMo 1969. In 1974, the 77th General Assembly, Second Regular Session, adopted House Bill No. 1132, containing five sections relating to certain merchandising practices. Laws of Mo., 1974, p. 896. The law enacted by this bill defined "pyramid sales scheme" and "franchise." It also forbade pyramid sales schemes and prohibited the cancellation or termination of franchise agreements without ninety days notice except for specified cause. Section 5 of the bill (§ 407.420, RSMo Supp. 1975) made it a felony to violate § 2 of the bill (§ 407.405, RSMo Supp. 1975) pertaining to pyramid sales schemes and cancellation of franchise agreements.

House Bill No. 810, the constitutionality of which is attacked in this case, had as its title when introduced the following:

"An Act to repeal Section 1 of House Bill 1132, Second Regular Session, 77th General Assembly, relating to certain merchandising practices, with penalty provisions, and to enact in lieu thereof one new section to be known as Section 1."

When finally adopted as law, the title of House Bill 810 had been amended by adding the portion italicized so that it reads as follows: "An Act to repeal Section 1 of House Bill 1132, Second Regular Session, 77th General Assembly, relating to certain merchandising practices, with penalty provisions, and to enact in lieu thereof one new section to be known as Section 1, *to enact a new Section 4 and renumbering Sections 4 and 5.*"

The new § 1 changed the definition of "franchise" so as to explicitly include wholesalers and suppliers or distillers of spirituous liquors. New § 4 prohibited the cancellation of liquor franchises at will. These changes were made by Senate amendment No. 1. The full text of House Bill 810, as adopted by the legislature, with the part added by Senate amendment No. 1 italicized, is set out in the attached appendix.

The parts of House Bill 810 regulating franchise agreements in the liquor industry were similar to provisions of House Bill No. 569 (also introduced in the 78th General Assembly, First Regular Session) which sought to amend chapter 311, relating to

---

7. Section 407.420, RSMo Supp. 1975.

8. Subsection 1 of § 407.400, RSMo Supp. 1975.

9. Section 407.413, RSMo Supp. 1975.

10. Senate amendment No. 1, House Bill 810.

alcoholic beverages, by adding two new sections pertaining to franchise agreements. This bill was not adopted.

Defendants and intervenor contend that the trial court erred in enjoining enforcement of §§ 1(6) and 4 of House Bill 810 and in declaring them unconstitutional, because, they say, those sections do not violate Mo. Const. Art. III, §§ 21 or 23 in that (1) the bill was not so amended in its passage through the legislature as to change its original purpose, and (2) its title contains one subject clearly expressed therein.

In response, plaintiffs contend and argue that the court correctly held (1) the title of the bill, as passed, did not contain one subject clearly expressed, that the title contained "matters which are incongruous, unconnected and deceptive," and did not refer to penalty provisions contained in the bill; and (2) that an amendment of the bill made during its passage changed its original purpose; that when chapter 407 was enacted in 1967 it dealt with "consumer protection" and the liquor industry was not covered by its terms; that, as finally passed, the bill amended the comprehensive code of liquor control (chapter 311) by amendment of the consumer protection statutes although the bill specifically designed to accomplish this result (House Bill 569) was not adopted.

Defendants also contend that contracts or agreements between the distiller or supplier of intoxicating liquor and the wholesaler are not "franchises" within the meaning of the law adopted by passage of House Bill 810. Intervenor, unlike its codefendants but agreeable to the position of plaintiffs, contends that the agreements are such franchises. The trial court concluded that the agreements these plaintiffs have with various wholesalers are franchises within the meaning of these statutes. We concur in that holding. See: *Carlo C. Gelardi Corp. v. Miller Brewing Co.,* 421 F.Supp. 233, 236 (D.N.J.1976); *Globe Liquor Co. v. Four Roses Distillers Co.,* 281 A.2d 19, 20 (Del.1971).

Section 21, like § 23 of Article III, imposes restrictions and limitations upon the legislative process of enacting a law. In con-

sidering the "change of purpose" clause of this section the court said in *Allied Mutual Insurance Company v. Bell,* 353 Mo. 891, 185 S.W.2d 4[1, 3] (Mo.1945) at l. c. 6: "This purpose means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated * * * ; and, that "we must make every reasonable intendment to sustain the constitutionality of a statute."

In considering the reasons for the limitations imposed by § 21 upon the legislative process, the court said in *State v. Ludwig,* 322 S.W.2d 841[4] (Mo. banc 1959) at l. c. 847:

"This constitutional limitation, as with the limitation to one subject, is designed to prevent ' "the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws." ' 1 Cooley, Constitutional Limitations, p. 314. 'Purpose' is the key word in the provision and 'means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated.' *State ex rel. McCaffery v. Mason,* 155 Mo. 486, 502–503, 55 S.W. 636, 640. Again, the restriction is against the introduction of matter 'not germane to the object of legislation or unrelated to its original subject,' alterations which bring about an extension or limitation of the scope of a bill are not prohibited, even new matter is not excluded, if germane."

As indicated previously, the title to the bill by which chapter 407 was originally enacted in 1967 stated that it related to certain merchandising practices. Laws of Mo., 1967, p. 607. Subsequent legislation, House Bill 1132, enacted in 1974, related to the same subject: "merchandising practices." It defined for the first time: "pyramid sales scheme" and "franchises," and made it a felony to violate § 2 thereof which, in connection with the sale of goods, etc., prohibited the sale of the right to participate in a pyramid sales scheme, and

prohibited the cancellation of a franchise agreement without notice. Laws of Mo., 1974, p. 896. House Bill 810, bearing essentially the same title, repealed and reenacted with changes House Bill 1132 and both, as finally passed, related to what we believe are, as suggested by intervenor, two types of merchandising practices: "pyramid sales schemes and franchise security." The amendment of House Bill 1132 as proposed by House Bill 810 (before Senate amendment) related to and had for its general purpose the security of business franchises: the prohibition of cancellation or termination of such franchise agreements without cause and notice. The amendment proposed in the Senate and adopted by both houses related to and had the same purpose. We note that while we have the view that the law adopted by the enactment of House Bill 1132 applied, before the passage of House Bill 810, to merchandising practices within the liquor industry, the passage of House Bill 810, as amended, made it clear this industry had the same protection in this area of merchandising practices as other businesses.

Senate amendment No. 1 was germane to the subject and object of House Bill 810. The bill was not so amended as to change its original purpose.

Plaintiff's contention that the title of House Bill 810, as passed, violates the "one subject" limitation of § 23, is, as stated, that the purported "title contains matters which are incongruous, unconnected and deceptive" and that the "title did not refer to the penalty provisions contained in the bill."

The court considered the purpose of the "one subject" provision in *Edwards v. Businessmen's Assurance Co.*, 350 Mo. 666, 168 S.W.2d 82[17–19] (Mo.1942) and said at l. c. 92–93:

"The purpose of the constitutional provision, supra, has been stated as follows: 'First, to prevent hodge podge or "log rolling" legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation and which might therefore be overlooked and carelessly and unintention-ally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered in order that they have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.' * * *.

"In the case of *State v. Hurley*, 258 Mo. 275, 278, 167 S.W. 965, 966, the court said: 'The purpose of the constitutional provision (section 28, art. 4, Const.Mo.) is that the title shall generally indicate what the act contains, and by the terms "generally indicate" we mean that it shall refer in a comprehensive manner to the subject-matter of the enactment; but it need not necessarily refer to subordinate matters connected therewith or reasonably within the purview of the statute.'

"The provision requires that matters which are incongruous, disconnected and without natural relation to each other must not be joined in one bill, and the title must be a fair index of the matters in the bill. *State ex rel. Niedermeyer et al. v. Hackmann*, 292 Mo. 27, 31, 237 S.W. 742. It does not prevent the inclusion in one bill, under one general title, of subjects naturally and reasonably related to each other. * * * 'The law does not require each separate legislative thought to be embodied in a different bill, when they have a natural connection with each other.' *Thomas v. Buchanan County*, 330 Mo. 627, 636, 51 S.W.2d 95, 98. 'The evident object of the provision of the organic law relative to the title of an act was to have the title, like a guideboard, indicate the general contents of the bill, and contain but one general subject, which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation,—then the title can stand on its own merits, as an honest title, and does not impinge on constitutional prohibitions.' * * * The mere generality of the title will not prevent the act from being valid, where the title does not tend to cover up or obscure legislation which is in itself

incongruous and has no necessary or proper connection, and in case of an amendatory act a requisite of congruity is that such act shall pertain to and admit of being made a consistent part of the law to be amended. *State v. Mullinix*, 301 Mo. 385, 390, 257 S.W. 121.

"The constitutional provision simply requires that the title shall give information of the general subject of the act. While it may be so general in its terms as to omit matters germane to the principal features of the statute, if it sufficiently indicates the substantial purpose of the law, it will not be violative of the Constitution." *Graves v. Purcell*, 337 Mo. 574, 85 S.W.2d 543, 547–48[4] (Mo. banc 1935); *State v. Ludwig*, supra, at 846[1, 2]; *State ex rel. Toedebusch Transfer, Inc. v. Public Service Commission*, 520 S.W.2d 38, 43–44[1, 2] (Mo. banc 1975).

We have the view, and hold, that the amendment of these two sections of House Bill 810 did not violate the constitutional requirement that a bill contain no more than one subject and that it be clearly expressed in the title. First of all, the title did, contrary to plaintiff's argument, refer to penalty provisions. The bill, when introduced and as amended, made no change in and had no effect upon § 6 (now § 407.420) fixing a penalty for violation of provisions of the law enacted by House Bill 1132. The title of the bill, as introduced and as amended, referred to the penalty provisions which had been adopted previously by the enactment of House Bill 1132 and the bill did not propose to change or enact penalty provisions different from those in what is now § 407.420.

The title was very broad and general: "certain merchandising practices." The amendment of the title was consistent with the amendment of §§ 1(6) and 4 and consistent with the subject and purpose of the bill when introduced. We find no matters in the title which may be said to be deceptive or misleading. The discussion of the "purpose" of the bill demonstrates that its amendment is compatible and consistent with its title and that the title refers in a comprehensive manner to the subject of the bill. The fact that the amendment specifically referred to and regulated merchandising practices within the liquor industry and properly could as well have been made a part of the Liquor Control Law (chapter 311) did not change the purpose of the bill or cause the title to fail to indicate generally what the bill contained.

The judgment and decree are reversed.

MORGAN, C. J., BARDGETT, FINCH, DONNELLY and SEILER, JJ., and HOUSER, Special Judge, concur.

RENDLEN, J., not sitting.

### APPENDIX

Section 1. As used in this act:

(1) The term "sale or distribution" includes the acts of leasing, renting or consigning;

(2) The term "goods" includes any personal property, real property, or any combination thereof;

(3) The term "other property" includes a franchise, license distributorship, or other similar right, privilege, or interest;

(4) The term "person" includes an individual corporation, trust, estate, partnership, unincorporated association, or any other legal or commercial entity; and

(5) The term "pyramid sales scheme" includes any plan or operation for the sale or distribution of goods, services or other property wherein a person for a consideration acquires the opportunity to receive a pecuniary benefit, which is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers, and is based upon the inducement of additional persons, by himself of others, regardless of number, to participate in the same plan or operation;

(6) "Franchise" means a written *or oral* arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteris-

tic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise, *including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler", such wholesaler being a person as defined in this section, licensed under the provisions of Chapter 311 to sell at wholesale, spirituous liquor and wine containing alcohol in excess of 5 percent by weight to retailers, duly licensed in this state, and a "supplier", being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state solicitor whose brands of spirituous liquor and wine are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of spirituous liquors and wines, or all of them, as may be specified,* except that, the term "franchise" shall not apply to persons engaged in sales from warehouses or like places of storage, *other than wholesalers as above-described,* leased departments of retail stores, places of original manufacture, nor shall the term franchise apply to a commercial relationship that does not contemplate the establishment or maintenance of a place of business within the State of Missouri. As used herein "place of business" means a fixed, geographical location at which goods, products or services are displayed or demonstrated for sale.

Section 2. 1. No person shall, directly or through the use of agents or intermediaries, in connection with the sale or distribution of goods, service, or other property, sell, offer or attempt to sell a participation or the right to participate in a pyramid sales scheme. No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety days in advance of the cancellation, termination or failure to renew, except that when criminal misconduct, fraud, abandonment, bankruptcy or insolvency of the franchisee, or the

giving of a no account or insufficient funds check is the basis or grounds for cancellation or termination, the ninety days notice shall not be required.

Section 3. 1. Any contract made in violation of section 2 of this act is void and any person who, directly or through the use of agents or intermediaries, induces or causes another person to participate in a pyramid sales scheme will be liable to that person in civil damages in an amount equal to the sum of twice the amount of consideration paid, and in the case of any successful action to enforce such liability, the costs of the action together with a reasonable attorney's fee, as determined by the court. An action under this section may be brought in the circuit court having venue within five years from the date on which the consideration was paid.

2. A franchisee suffering damage as a result of the failure to give notice as required of the cancellation or termination of a franchise, may institute legal proceedings under the provisions of this act against the franchiser who canceled or terminated his franchise in the circuit court for the circuit in which the franchisor or his agent resides or can be located. When the franchisee prevails in any such action in the circuit court, he may be awarded a recovery of damages sustained to include loss of goodwill, costs of the suit, and any equitable relief that the court deems proper.

Section 4. 1. *If more than one franchise for the same brand or brands of spirituous liquor and wines, or all of them, is granted to different wholesalers in this state, it is a violation of this act for any supplier to discriminate between the wholesalers with respect to any of the terms, provisions, and conditions of these franchises.*

2. *Notwithstanding the terms, provisions and conditions of any franchise, no supplier shall unilaterally terminate or refuse to continue or change substantially the condition of any franchise with the wholesaler unless the supplier has first established good cause for such termination, noncontinuance or change.*

3. *Any wholesaler may bring an action in a court of competent jurisdiction against a supplier for violation of any of the provisions of this section and may recover damages sustained by him together with the costs of the action and reasonable attorney's fees.*

4. *In any action brought by a wholesaler against a supplier for termination, noncontinuance or substantial change in violation of the provisions of this section, it is a complete defense for the supplier to prove that the termination, noncontinuance or change was done in good faith and for good cause.*

5. *As used in this section, "good faith" is the duty of each party to any franchise and all officers, employees or agents thereof to act in a fair and equitable manner towards each other, and "good cause" means either of the following:*

(1) *Failure by the wholesaler to comply substantially with the provisions of an agreement or understanding with the supplier, which provisions are both essential and reasonable; or*

(2) *Use of bad faith or failure to observe reasonable commercial standards of fair dealing in the trade.*

Section 5. In addition to other penalties and remedies provided in this act, whenever it appears that any person is engaged or is about to engage in any act or practice which constitutes a pyramid sales scheme, the attorney general may bring an action in the circuit court having venue to enjoin such act or practice, and upon a proper showing, a temporary restraining order or a preliminary or permanent injunction shall be granted without bond.

Section 6. Any person willfully violating any of the provisions of section 2 of this act is guilty of a felony and, upon conviction, shall be punished by a fine of not more than five thousand dollars or by imprisonment by the department of corrections for a term not to exceed five years, or both such fine and imprisonment.