LINCOLN CREDIT CO., et
al., Appellants,

v.

George PEACH, et al., Respondents.

No. 63018.

Supreme Court of Missouri,
En Banc.

July 6, 1982.

Rehearing Denied Aug. 2, 1982.

Warren H. Kawin, L. W. Higley, St. Louis, for appellants.

John Ashcroft, Atty. Gen., S. Francis Baldwin, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., David Wells and John Finger, St. Louis, for respondents.

DONNELLY, Chief Justice.

In 1979, the Missouri General Assembly enacted § 408.096, RSMo Supp. 1979 (effective September 28, 1979). It provides as follows:

> No person, firm or corporation shall receive or impose any fee or charge, other than one expressly provided for by statute, for arranging credit in the amount of one thousand dollars or less the proceeds of which are intended to be used by the borrower primarily for personal, family or household purposes. Any contract evidencing such excess fee or charge and any note evidencing credit so arranged is void. Any person, firm or corporation who receives or imposes a fee or charge prohibited by this section is guilty of a class B misdemeanor.

On September 7, 1979, appellants filed a suit for declaratory judgment in the Circuit Court of the City of St. Louis and sought to have § 408.096 declared void on the grounds that it violated the United States Constitution and the Missouri Constitution.

Appellants' petition stated that they were corporations duly organized under the laws of the State of Missouri for the purpose of arranging credit between a borrower and a third-party lender; that appellants receive

a fee for such services; that the loan is usually evidenced by a promissory note between the borrower and the third-party lender; that the effect of § 408.096 was to make unlawful the previously lawful business conducted by appellants because they arrange only loans of $1,000 or less for personal, family or household purposes; that enforcement of § 408.096 would prohibit appellants from collecting the fee charged for arranging loans and would prohibit third-party lenders from collecting money loaned to the borrowers; and that the effect of the statute is to invalidate loans already contracted for and thus to subject appellants to suit by the third-party lenders who loaned money to appellants' clients. Appellants pleaded that § 408.096 violates provisions of the Missouri Constitution and of the United States Constitution. Appellants also requested that the court enjoin George Peach, Circuit Attorney for the City of St. Louis, and John Ashcroft, Attorney General of the State of Missouri, from prosecuting them under the statute.

On September 7, 1979, the circuit court issued a temporary restraining order against defendants Peach and Ashcroft. On September 25, 1979, October 11, 1979, and November 29, 1979, amended restraining orders were entered. On December 13, 1979, all parties consented to an order continuing the last amended restraining order until further court order.

On October 24, 1980, appellants filed a motion for summary judgment which requested the trial court to find that § 408.-096 destroyed appellants' business and that it violated both the United States Constitution and the Missouri Constitution.

On March 16, 1981, the trial court entered a summary judgment denying appellants' constitutional attacks on § 408.096. The court held that the statute was not invalid or void, and declared that the temporary restraining order had expired. On March 26, 1981, appellants filed a motion to modify the summary judgment decree, declared their intent to appeal directly to this Court, and requested that the trial court stay that part of the decree which vacated the tempo-

rary restraining order pending this Court's disposition of the case. On April 21, 1981, the trial court entered an order which granted that request. Notice of appeal was then filed with this Court.

 The basic test to determine whether a plaintiff has standing to bring suit for declaratory and injunctive relief is whether he has a legally protectible interest at stake. *Schweig v. City of St. Louis*, 569 S.W.2d 215 (Mo.App.1978). Missouri courts have held that whether a party can lawfully engage in its business under a particular statute presents a situation where that party has a legally protectible interest. *State ex rel. Eagleton v. McQueen*, 378 S.W.2d 449, 452 (Mo.banc 1964). Moreover, such a question constitutes a justiciable controversy under the declaratory judgment act even though no enforcement of that statute has yet been commenced against that party. *Id.*, at 452. Therefore, there is a justiciable controversy here. This Court has jurisdiction because this case involves the validity of a statute of this state. Mo.Const.Art. V, § 3.

Appellants first contend that the trial court erred in failing to declare § 408.096 unconstitutional, as applied to contracts made prior to its effective date, because the statute voids those contracts, criminally punishes appellants for receipt of payments under those contracts, and prohibits future receipt of payments due under them.

 As a general rule, statutes operate prospectively. *St. Louis County v. University City*, 491 S.W.2d 497, 499 (Mo.banc 1973). This rule controls unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication. *Id.* However, although a statute can operate retroactively, proscriptions exist against retrospective laws, ex post facto laws, and laws that impair contract obligations. Mo.Const.Art. I, § 13; *Planned Industrial Expansion Authority of the City of St. Louis v. Southwestern Bell Telephone Company*, 612 S.W.2d 772, 775 (Mo.banc 1981). A retrospective law, as that term is used in the

Missouri Constitution, is one which impairs existing vested civil rights. *Clark v. Kansas City, St. Louis & Chicago Railroad*, 219 Mo. 524, 532, 118 S.W. 40, 43 (1909). More specifically, Mo.Const.Art. I, § 13 prohibits subsequent legislation from invalidating contracts lawful at the date of their making. *See Home Telephone Company v. Sarcoxie Light & Telephone Company*, 236 Mo. 114, 132, 139 S.W. 108, 112 (banc 1911). Of course, this constitutional provision has no application in a situation where the law is enacted before the contract is entered into. *See State v. Laurisden*, 312 S.W.2d 140, 143 (Mo.1958).

An ex post facto law is one which denounces as criminal acts which were noncriminal when committed or which changes penalties for criminal violations after such violations are committed. *State ex rel. Jones v. Nolte*, 350 Mo. 271, 284, 165 S.W.2d 632, 638 (banc 1942).

In our view, § 408.096 should not and cannot be applied retroactively to invalidate the loan contracts which appellants entered into prior to its effective date. First, there is no express language indicating that it should apply retroactively. Second, application of the law to invalidate the contracts made before its effective date would contravene the constitutional proscription in Mo.Const.Art. I, § 13 against retrospective laws and laws which impair contract obligations. Furthermore, such operation would constitute an ex post facto law because it would make receipt of payments under the contracts criminal whereas when the contracts were made such receipt was not criminal.

A basic maxim of statutory construction requires that a court faced with a constitutional challenge to a statute must, if possible, construe it in favor of constitutionality. *Cascio v. Beam*, 594 S.W.2d 942, 946 (Mo. banc 1980). Therefore, § 408.096 must be construed to operate prospectively only. So construed, § 408.096 is not unconstitutional for the reasons first urged by appellants.

Appellants next assert that the trial court erred in not finding that § 408.096

deprives them of equal protection of the law as guaranteed by U.S.Const., Amend. 14, § 1, and Mo.Const.Art. I, § 2, and deprives them of property without due process of law as guaranteed by U.S.Const., Amend. 14, § 1, and Mo.Const.Art. I, § 10.

The substantial state interest asserted by the Attorney General to justify the enactment of § 408.096 is as follows:

"Section 409.096 [sic] must be upheld as the Missouri legislature could have reasonably found that businesses and others engaged in the business of arranging credit frequently extort large sums from the poor and uneducated in need of small, personal loans, i.e., those least able to protect themselves from usury, outrageous fees, adhesion contracts and unconscionable bargains. Further, the legislature could have found that such businesses 'string the poor along' from payday to payday, charging outrageous sums under the guise of fees and commissions so that the borrower is forced to borrow again and again in the hope of paying off the loan, thus creating a system of perpetual indebtness [sic] and servitude. Further, the legislature could have found that the industry has for years been notoriously abusive of those in need of quick cash for personal purposes and that strong measures were needed."

In our view, "[a] rational legislature could have based its decision on such considerations." *Ross v. Kansas City General Hospital and Medical Center*, 608 S.W.2d 397, 399 (Mo.banc 1980). "It is enough that there is an evil at hand for correction, and that it might be thought that ... [this] particular legislative measure was a rational way to correct it.... The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here." *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488, 489, 75 S.Ct. 461, 464, 465, 99 L.Ed. 563 (1955). We cannot invalidate the underinclusive § 408.096 as unconstitutionally arbitrary.

Appellants' next claim is that the phrase "arranging credit" in § 408.096 is an uncon-

stitutionally vague and uncertain limitation on appellants' businesses, resulting in a deprivation of property without due process of law.

In context, the specified phrase appears as follows:

No person, firm or corporation shall receive or impose any fee or charge, other than one expressly provided for by statute, for *arranging credit* in the amount of one thousand dollars or less .... (emphasis added.)

■ If the terms or words used in a statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirement as to definiteness and certainty. *Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo.banc 1980). Where, however, the statutory terms are of such uncertain meaning, or so confused that the courts cannot discern with reasonable certainty what is intended, the statute is void. *Id.* On a challenge to a statute or ordinance as being unconstitutionally vague it is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing but rather, the language is to be treated by applying it to the facts at hand. *Id.*

"Arrange" is defined in Webster's Third New International Dictionary (1965), as "to put in order beforehand; make preparations for ...." In a statute related to § 408.096, "arranged" is defined as "to provide or offer to provide a loan which is or will be extended by another person ...." § 408.400(1), RSMo 1978. Although we can find no cases in which the word "arrange" has been construed by courts of this state in the context of a loan or credit transaction, as here, other courts have had such opportunities. *E.g., Whitlock v. Midwest Acceptance Corporation*, 575 F.2d 652 (8th Cir. 1978); *Manning v. Princeton Consumer Discount Company*, 533 F.2d 102, 104 (3d Cir. 1976); *Union Mortgage Banking & Trust Company v. Hagood*, 97 F. 360, 364 (D.S.C. 1899); *Gerasta v. Hibernia National Bank*, 411 F.Supp. 176, 178 (E.D.La.1975); *Thompson-Starrett Company v. Masons' Adminis-*

*trators*, 304 Ky. 764, 201 S.W.2d 876, 880 (1946). Despite their different fact patterns, these cases define "arrange" consistently with those definitions set out above.

The facts of appellants' routine business dealings with their clientele are undisputed. In their own pleadings and brief, appellants state that they meet with their clients to *arrange credit.* This involves pledging appellants' credit, in favor of the client, to a third-party lender who actually lends the money. Appellants charge a fee for their services of arranging and guaranteeing the loan. The agreement reached is usually evidenced in a written contract.

■ No more need be said than that the phrase "arranging credit", as employed in § 408.096, clearly encompasses appellants' acts in obtaining from third-party lenders loans for their customers. The challenged language of the statute is not unconstitutionally vague when examined in light of the facts of this case, and there is no need to attempt to resolve the statute's constitutionality under any hypothetical set of facts. *Prokopf v. Whaley*, 592 S.W.2d at 824. Appellants raise, in their brief, many other allegations regarding the unconstitutional vagueness of certain other phrases in § 408.096. However, these contentions were not presented to the trial court and it has long been stated that this Court will not, on review, convict a lower court of error on an issue which was not put before it to decide. *School District of Kansas City v. Smith*, 342 Mo. 21, 111 S.W.2d 167, 168 (1937); *Alexander v. Haden*, 2 Mo. 211, 212 (1830).

The trial court's finding that the statute was not unconstitutional for vagueness must be sustained.

Appellants' next several points of error hinge upon the allegation that § 408.096 is unconstitutional as a special law. They argue that because § 408.096 is a special law it violates many constitutional provisions, to wit: (1) Mo.Const.Art. XI, § 2, because it amends the corporate charter of each appellant by special law; (2) Mo.Const.Art. III, § 40(27), which prohibits regulation of

trade by special law in that businesses other than appellants are not affected by the prohibitions and penalties of § 408.096; (3) Mo.Const.Art. III, § 40(28), which prohibits any grant of special or exclusive rights, privileges, and immunities in that other businesses are unaffected by the prohibitions and penalties of § 408.096; (4) Mo. Const.Art. III, § 42, which requires thirty days notice of intention to pass a special law in that such notice was not given; (5) Mo.Const.Art. III, § 44, which prohibits any law fixing rates of interest for any particular group or class engaged in lending money; and (6) Mo.Const.Art. III, § 40(26), which prohibits any special law fixing the rate of interest.

■ The resolution of the assertion that § 408.096 constitutes a special law is dispositive of all the points raised.

In our view, the assertion is without merit. The statute applies uniformly to all persons, firms or corporations. As indicated *supra*, § 408.096 is not "unconstitutionally arbitrary." It is well-established that "a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Ross v. Kansas City General Hospital and Medical Center*, 608 S.W.2d 397, 400 (Mo.banc 1980).

Appellants next urge that the trial court erred in not finding that § 408.096 violates Mo.Const.Art. I, § 13, because it has the effect of making an irrevocable grant of special privileges and immunities to businesses other than appellants in that appellants are affected by the prohibitions and penalties of the statute while other businesses are not. They now assert that the business transactions excepted from § 408.-096 are set out in "V.A.M.S. §§ 408.095, 408.140, 408.190, 408.250, 408.300, and 408.-400 to 408.415."

■ Article I, § 13 of the Missouri Constitution provides that no law "making any irrevocable grant of special privileges or immunities, can be enacted." It has been held that the constitutional proscription applies to privileges or immunities granted to "a person or class of persons to the *exclu-*

*sion of others* and in derogation of common right." *State ex inf. Chaney v. West Missouri Power Co.*, 313 Mo. 283, 297, 281 S.W. 709, 713 (1926). As indicated *supra*, § 408.-096 applies uniformly to all persons, firms or corporations. The assertion is without merit.

Appellants next urge that the trial court erred in not finding that the bill, of which § 408.096 was a part, was so amended in its passage as to change its original purpose, in violation of Mo.Const.Art. III, § 21. The constitutional provision upon which appellants rely provides in pertinent part as follows:

> Section 21. *Style of laws—bills—limitation on amendments—power of each house to originate and amend bills—reading of bills.*—No law shall be passed except by bill, and *no bill shall be so amended in its passage through either house as to change its original purpose.* Bills may originate in either house and may be amended or rejected by the other. (emphasis added.)

The title of the original Senate Bill 305 was as follows:

> An Act [t]o repeal sections 408.030, 408.050, 408.060, and 408.070, RSMo 1978, *relating to interest*, and to enact in lieu thereof three new sections relating to the same subject, with penalty provisions. (emphasis added.)

while the title to the Senate Bill 305 actually passed is as follows:

> An Act [t]o repeal sections 408.015, 408.020, 408.030, 408.031, 408.036, 408.052, 408.100, 408.140, 408.200, 408.220, 408.250, 408.255, 408.256, and 408.300 RSMo 1978, *relating to certain credit transactions* and to enact in lieu thereof forty new sections relating to the same subject, with penalty provisions, an effective date covering certain sections, and an emergency clause for a specific section. (emphasis added.)

Appellants' argument here is accurately stated in syllogistic fashion: (1) Mo.Const. Art. III, § 21, prohibits amending any bill through its passage in either house as to change its original purpose; (2) the original Senate Bill 305 solely concerned interest, as

evidenced by its title and the statutory sections contained therein; (3) Senate Bill 305, as actually adopted, contains numerous sections which do not relate to interest at all, including § 408.096; (4) therefore, the inclusion of § 408.096 in the adopted Act violated Mo.Const.Art. III, § 21, because it related to a purpose [*i.e.*, credit transactions] different from that of the original bill [*i.e.*, interest]. Appellants also contend that the presence of § 408.096 in only the amended Act violated Mo.Const.Art. III, § 21, because its provisions were new, and concerned a subject different from that in the original bill.

Resolution of the contentions made requires comparison of the purpose of the original Senate Bill 305 and of Senate Bill 305 as actually passed.

Here, as with all challenges to the constitutionality of a statute, there must be facts pleaded in support of the attack, City of *St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372 (banc 1949), and the burden of proof is on those who attack the statute. *Atkins v. Department of Building Regulations, City of Springfield*, 596 S.W.2d 426, 434 (Mo.1980).

■ The constitutional limitation that no bill may be so amended as to change its original purpose is "designed to prevent the enactment of amendatory statutes in terms so blind that legislators themselves ... [would be] ... deceived in regard to their effect, and the public, from difficulty in making the necessary examination and comparison, [would fail] to become apprised of the changes in the laws." *State v. Ludwig*, 322 S.W.2d 841, 847 (Mo.banc 1959). "Purpose" is the key word in the provision, and it means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated. *Brown-Forman Distillers Corp. v. McHenry*, 566 S.W.2d 194, 196 (Mo.banc 1978). The restriction is against the introduction of matter which is not germane to the object of the legislation or which is unrelated to its original subject. *Id.* Alterations which bring about an extension or limitation of the scope of the bill are not

prohibited; even new matter is not excluded if germane. *Id.* It is noteworthy that the title of an act, "though performing a most important function, is still not strictly a part of the act proper." *State ex rel. Aull v. Field*, 119 Mo. 593, 609, 24 S.W. 752, 755 (banc 1894); *see also, Allied Mutual Insurance Co. v. Bell*, 353 Mo. 891, 899, 185 S.W.2d 4, 8 (1945).

■ Examination of the provisions of the original Senate Bill 305 shows that it is related to a variety of aspects of the same subject matter—credit transactions. For example, sections therein concerned lawful interest rates, causes of action for excessively extracted interest (including damages, costs, and statutes of limitation), negotiability of notes, availability of usury as a defense to the enforcement of a promissory note, etc. These are not different subjects but rather are naturally related in the legislature's attempt to govern credit transactions.

The amendments made to this bill, as evidenced by the text of the finally amended bill which was passed, were not made in violation of Art. III, § 21. They, like the sections in the original bill, relate to credit transactions. The additions to the original bill do not run afoul of the constitution. Even alterations which would extend the scope of the bill are not prohibited. *Brown-Forman Distillers Corp. v. McHenry*, 566 S.W.2d at 196.

■ Nor does the change in the bill's title affect its constitutional validity. The title is not a part of the bill and so can be changed without violating Art. III, § 21. *See, State ex rel. Aull v. Field*, 24 S.W. at 755 (Mo.banc 1894). Appellants assert that the amended Senate Bill 305 violated Art. III, § 21, because § 408.096 and other sections do not relate to interest, as the title of the original bill indicated. A study of both bills illustrates that the purpose of both was to govern and regulate credit transactions. The title of the original bill was rightly changed to reflect the real scope of subject matter in the bill. The title of Senate Bill 305, as enacted, is accurate and constitutional.

The provisions of § 408.096 clearly relate to credit transactions and so are properly within the purpose of the bill. This puts to rest appellants' contention that the statute should not be included in Senate Bill 305 on the ground that it did not exist previously.

The trial court's finding that Mo.Const. Art. III, § 21, was not violated must be sustained.

Appellants contend that the title of Senate Bill 305 violates Mo.Const.Art. III, § 23, which provides that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title...." Appellants claim: (1) the bill contains more than one subject, and (2) the bill's title is in fact misleading and deceptive because it (a) gives the impression that the subject matter covered by § 408.096 was covered in previous Missouri legislation although it was not, and (b) "creates the impression that it merely relates to the regulation of certain credit transactions, and certain penalty provisions, all as covered by legislation being repealed by the bill whereas the legislation has the effect of prohibiting, not just regulating [business] [,] ... and the legislation not only concerns penalties, but in fact creates civil and criminal liabilities for ... [appellants] ... which liabilities never existed under prior Missouri legislation."

The purpose of Art. III, § 23, is to ensure that the title of a bill generally indicates what the act contains so that neither the legislature nor the public is misled. *State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592, 602 (Mo. banc 1980). The title need not express the limitations in the body of the act, but where the title of an act descends to particulars and details, the act must conform to the title as thus limited by the particulars and details. *Hunt v. Armour*, 345 Mo. 677, 681–682, 136 S.W.2d 312, 314 (1939). The title to an act will be valid if it indicates the general contents of the act and if the contents fairly relate to and have a natural connection with the subject expressed in the title. *State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d at 601. Mere generality of title will not prevent the act

from being valid, where the title does not tend to cover up or obscure legislation which is in itself incongruous and has no necessary or proper connection with the rest of the act. *Brown-Forman Distillers Corp. v. McHenry*, 566 S.W.2d at 197.

Here, as with other challenges to the constitutionality of a statute, the party on the attack has the burden to show that a constitutional provision has clearly and undoubtedly been contravened. *State v. Weindorf*, 361 S.W.2d at 809. In this situation appellants need to illustrate what the foreign or unrelated provisions are. *Id.* at 810. On the state of the record no proof whatsoever has been adduced to support appellants' position. Nevertheless, an attempt will be made to resolve the issues on the language of the title and content of Senate Bill 305.

A case worthy of close examination here is *Edwards v. Businessmen's Assurance Co.*, 350 Mo. 666, 168 S.W.2d 82 (1942). There, appellants complained that an insurance act entitled "An Act to revise and amend the Insurance Laws of the State of Missouri" violated Art. IV, § 28 (now Art. III, § 23) because it included a provision on suicide and its effect on insurance coverage but the title did not mention it, and because there was no existing suicide statute to amend and therefore that provision was a new law. 168 S.W.2d at 92. Appellants argued that if "new and additional laws can be enacted by incorporating them into a bill to revise and amend existing laws, then the purpose of [Art. III, § 23] ... may be destroyed and circumvented and new and important legislation may be enacted without notice thereof to members of the General Assembly or to the people." *Edwards v. Businessmen's Assurance Co.*, 168 S.W.2d at 92. The Court acknowledged that "[t]he so-called suicide statute first appeared in an act ... entitled 'An Act to revise and amend the Insurance Laws of the State of Missouri.'" 168 S.W.2d at 92. In rejecting appellants' claim, the *Edwards* court employed the legal principles set out above to find that the title did not violate the constitution by being overbroad or misleading.

The *Edwards* case is sufficiently analogous to the instant case to be dispositive. As in *Edwards*, the title of Senate Bill 305 gives a clear idea of the substantial purpose of the act and the challenged statute is reasonably related to the rest of the bill. The fact that the title omits particular details of the act, such as what prohibitions, etc., are included, is not fatal. Moreover, the fact Missouri has never before had, as law, the specific provisions of § 408.096 does not mean that the statute violates Art. III, § 23. The provisions of § 408.096 are neither incongruous, disconnected, nor without natural relation to the rest of the bill, which relates to credit transactions. Therefore, Senate Bill 305 does not contravene Mo.Const.Art. III, § 23, as asserted by appellants.

The denial by the trial court of appellants' contention on this issue must be sustained.

In our view, § 408.096 is constitutional.

The judgment of the trial court is affirmed.

All concur.