**DEPARTMENT OF SOCIAL SERVICES, et al., Appellants-Cross-Respondents,**

v.

**VILLA CAPRI HOMES, INC., et al., Respondents-Cross-Appellants.**

No. 65786.

Supreme Court of Missouri, En Banc.

Jan. 15, 1985.

Rehearing Denied Feb. 26, 1985.

**328**

Andrew Rothschild, St. Louis, for respondents-cross-appellants.

Gregory W. Schroeder, Dept. of Social Services, Gen. Counsel Div., Jefferson City, for appellants-cross-respondents.

Harvey Tettlebaum, Jefferson City, for amicus curiae.

WELLIVER, Judge.

Eleven nursing homes [1] participating in Missouri's Title XIX Medicaid program initiated a proceeding before the Administrative Hearing Commission challenging the amount of state reimbursements received under the Medicaid program. The homes contended that reimbursements for the years of 1977 and 1978 should have been computed on the basis of an informal

---

1. Villa Capri Homes, Inc. d/b/a Villa Capri Manor; St. Louis No. 4, Inc. d/b/a Delhaven Manor; Aurora Nursing Center, Inc.; Piedmont No. 1, Inc. d/b/a Clark's Mountain Home; Health Services of Branson, Inc. d/b/a Rolling Hills Estates; Centralia No. 1, Inc. d/b/a Heritage Hall Nursing Home; Farmington No. 1, Inc. d/b/a Fleur de Lis; Van Buren No. 1, Inc. d/b/a Riverways Manor Nursing Home; Forest City Building Ltd. d/b/a Meadow Manor Nursing Home; Birchtree No. 1, Inc. d/b/a Birch View Manor Nursing Home; Salem No. 1, Inc. d/b/a The Seville.

agreement covering that period for the reason that the Medicaid plan and regulations could not be applied retroactively to claims prior to May 11, 1978. The Commission ruled this issue for the Homes and as to this issue the Department of Social Services appeals. The Homes also challenged the amount of reimbursements after May 11, 1978 alleging misinterpretation of the Medicaid plan and regulations. The Commission ruled this issue in favor of the Department and from this ruling the Homes appeal. Resolution of this issue may apply to reimbursements made both prior to and after May 11, 1978, if the plan is applied retroactively. In the interest of clarity, the parties will be referred to as the "Department" and the "Homes" except in the final judgment.

Petition for review was sought on both appeal and cross-appeal pursuant to § 536.-100–140, RSMo 1978. The circuit court affirmed both of the rulings made by the Commission. The appeal before this Court involves the construction and application of a state regulation, the State's Medicaid Plan, 13 C.S.R. 40–81.080. in light of settled constitutional principles and accordingly is not within our exclusive jurisdiction. We retain jurisdiction, however, in the interest of judicial economy. Rule 83.06. *State v. Higgins*, 592 S.W.2d 152, 153, n. 1 (Mo. banc 1979). We reverse in part and affirm in part.

On or about December 20, 1979, each of the Homes filed a petition before the Administrative Hearing Commission. These petitions alleged that the Department improperly interpreted the State's Medicaid plan, 13 C.S.R. 40–81.080, when it denied reimbursement by stipulated amounts for costs incurred during 1977 and 1978. The Homes also contested the Department's reduction of the amount sought for certain reimbursement under the Medicaid program following May 11, 1978. The reductions were made by the Department by deducting certain expenses for *inter alia*, management fees, podiatrist fees and amounts in excess of an upper limit set by the Department. Additionally, the Homes objected to the Department's reducing their reimbursements by the amount the Homes had received from providing room reservations and barber and beauty shop services. The Homes also unsuccessfully petitioned for a stay of the disallowance of reimbursement, claiming that they would be irreparably harmed unless the State reimbursed the questioned amounts.

In September 1980, the Administrative Hearing Commission granted the Homes' motion to consolidate the eleven cases. The Commission held its hearing on December 16, 1980. The Department chose not to present any evidence and elected to rest upon the factual matters developed on cross-examination. The Homes subsequently filed a post-hearing brief in which, for the first time, they argued that the Medicaid plan in 13 C.S.R. 40–81.080 could not be applied to the reimbursement claims prior to May 11, 1978, the date when the rule became an effective state regulation. The Administrative Hearing Commission issued its findings of fact and conclusions of law in January 1983. The Commission accepted respondents' argument and ruled that retroactive application of 13 C.S.R. 40–81.080 violated both the Missouri constitutional prohibition against retrospective laws, Article I, § 13, and certain federal regulations. In lieu of 13 C.S.R. 40–81.080 the Commission applied an informal Medicaid plan which it held governed reimbursements prior to May 11, 1978 and granted the Homes their claimed reimbursements. The Commission, however, held that claims for reimbursement of costs after May 11, 1978 were governed by 13 C.S.R. 40–81.-080, and it upheld the Department's treatment of the claims under the regulation.

The Department appealed the Commission's conclusion that 13 C.S.R. 40–81.080 could not be applied retroactively and that an informal Medicaid plan existed during the stated period. The Homes cross-appealed the Commission's finding that the Department properly reduced the amount of reimbursement by the profit portion of room reservation revenues and barber and beauty shop revenues, pursuant to 13 C.S.R. 40–81.080(13)(A) for the period from

May 11, 1978 to December 31, 1978. They also cross-appealed the Commission's finding that the Department could impose an "upper limit" on the amount of reimbursement, pursuant to 13 C.S.R. 40–81.080(23) for the period from May 11, 1978 to December 31, 1978.

The hearing before the Commission focused on the Department's interpretation of its 13 C.S.R. 40–81.080. Only after the Commission completed hearing evidence did the Homes challenge the retroactive application of 13 C.S.R. 40–81.080 and assert the existence of an informal cost plan covering the period between July 1, 1976 and May 11, 1978. The only germane evidence concerning this period is a one page memorandum and a short description of the memo by its author.

Congress created the Medicaid program by enacting Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. The program establishes a cooperative effort between the states and the federal government to provide "financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980). If a state adopts a Medicaid plan in compliance with Title XIX and duly promulgated federal regulations, "[t]he federal government provides matching funds to ... states which ... locally administer their own programs and transmit payments to providers of nursing home services." *AGI-Bloomfield Convalescent Center, Inc. v. Toan*, 679 S.W.2d 294 at 298 (Mo.App.1984). *See also Illinois Council on Long Term Care v. Miller*, 579 F.Supp. 1140, 1142 (N.D.Ill.1983). In 1967, Missouri elected to participate in this venture in cooperative federalism. 1967 Mo.Laws 325–28.

The thrust of this litigation centers around the State's attempt to comply with a change in the federal Medicaid program. In 1972, Congress passed an amendment to Title XIX, adding Public Law 92–603,

§ 249, 42 U.S.C. § 1396a(a)(13)(E). The amendment required all states participating in the Medicaid program to adopt plans for reimbursement for skilled nursing facilities and intermediate care facilities based on a "reasonable cost related basis as determined in accordance with methods and standards which shall be developed by the state on the basis of cost-finding methods approved and verified by the Secretary." Pursuant to the amendment, states were to adopt conforming reimbursement plans by July 1, 1976. The amendment was designed to facilitate higher quality medical care and foster more efficient use of Medicaid funds by reducing overpayments and underpayments that resulted from use of flat rates. 41 Fed.Reg. 27,300, July 1, 1976. One of the functions of this amendment was to encourage "state flexibility in the development of cost related reimbursement schemes." *American Health Care Association, Inc. v. Califano*, 443 F.Supp. 612, 614 (D.C.D.C.1977). *See also Illinois Council For Long Term Care v. Miller*, 503 F.Supp. 1091, 1093 (N.D.Ill.1980); *United Nursing Home, Inc., v. McNutt*, 35 Wash.App. 632, 669 P.2d 476, 480 (1983). States could set "reasonable cost related rates on either a prospective or retrospective basis." *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 388, 392 (5th Cir.1980). The 1972 amendment contemplated promulgation of federal regulations prior to 1976; these regulations would outline the parameters of an acceptable plan. By June 1976, however, the federal government had failed to issue any regulations.

Since its entry into the Medicaid program, the State has required that payments by the State are "to be made on the basis of the reasonable cost of the care or reasonable charge for the services as defined and determined by the Division of Family Services." § 208.152, RSMo 1978.[2] The Division of Family Services is also given authority to promulgate regulations defining reasonable costs. § 208.153,

---

2. The Division of Family Services is a division of the Department of Social Services. § 207.-

010, RSMo 1978.

RSMo 1978.[3] Prior to July 1, 1976, the State operated under what it called a negotiated rate system. The provider would approach the appropriate state agency and request a certain rate which reflected the amount sought for each Medicaid patient per diem. The two parties would thereupon negotiate and agree upon a rate until it was time to negotiate again. The Division of Family Services determined that this process could not be followed under the standard mandated by 42 U.S.C. § 1396(a)(13)(E). Left without any formal guidance by the federal government as of June 1976, the Department on June 26, 1976 sent an informal memorandum to all participating skilled nursing facilities and intermediate care facilities. The memorandum indicated that the Department would implement cost related reimbursement effective July 1, 1976, but the plan would not be filed with the Secretary of State's Office until the final federal regulations were published by the Department of Health, Education and Welfare. The memorandum expressly stated that "[t]he plan will be retroactive to July 1, 1976." This memorandum was written by the director of the Division of Family Services, Ewing B. Gourley. Mr. Gourley at the time of the hearing in this case had become the president of Health Projects, Inc., an owner of several of the Homes.

On July 1, 1976, when the states were to have the amendments to their state plans in effect, the Department of HEW published its final notice of rulemaking setting forth its approved cost-finding methods for reasonable cost related nursing home reimbursement, at 41 Fed.Reg. 27300–27308 (1976).[4] Although this same regulation attempted to give the states additional time to implement a cost related plan due to the Department's delay in publishing its rule, this part of the regulation has been held unconstitutional. *Alabama Nursing Home Association v. Califano,* 433 F.Supp. 1325 (M.D.Ala.1977). On February 1, 1978, the Department published its proposed state plan, 13 C.S.R. 40–81.080, entitled "Cost Related Reimbursement Plan for Long Term Care." 3 Mo.Reg. 62–73. The plan was adopted by order of rulemaking, with certain changes, "effective" May 11, 1978. 3 Mo.Reg. 227–28. Judge Sommerville has succinctly summarized the import of this plan:

> the plan promulgated by the Department of Social Services for determining reimbursement rates for nursing home services in Missouri under the Medicaid program could appropriately be described as a *retrospective reimbursement plan.* In essence, an estimated patient per diem reimbursement rate [is] established for each participating nursing home at the beginning of the state fiscal year and payments [are] made to participating homes on that basis. At the end of the fiscal year costs [are] reported by the participating homes to the Department of Social Services and the respective patient per diem rates were adjusted retroactively to reflect all allowable costs incurred throughout the preceding year, subject only to certain determinable limits. Additionally, a mechanism [is] provided for homes to obtain interim rate increases each quarter during the fiscal year.

*AGI-Bloomfield Convalescent Center, Inc. v. Toan, supra,* at 298–299. *See also Scotland County Nursing Home v. Department of Social Services, Division of Aging,* 675 S.W.2d 447, 448 (Mo.App.1984). It should be noted that 13 C.S.R. 40–81.080 has since been altered and Missouri now operates under a different Medicaid plan. *See generally* 13 C.S.R. 40–81.081–.085.

The Department paid the Homes approximately $8,493,166.00 in interim payments between 1977 and 1978. Such payments apparently were based upon previous cost determinations, and the Homes assumed that the Department would conduct year end settlements to adjust the amounts paid in these interim payments so as to reflect costs incurred during the covered year. The Department did not conduct year end

---

**3.** *Cf.* § 208.159, RSMo Cum.Supp.1984.

**4.** *See also* 42 Fed.Reg. 52827 (1977) (codified at 42 C.F.R. § 450.30); 43 Fed.Reg. 4861 (1978).

settlements and the Homes brought suit. The parties reached a compromise, whereby the Department's cost report forms, developed according to the structure of the Medicaid plan outlined in 13 C.S.R. 40–81.-080, were distributed to the Homes sometime prior to May 1979. The Department thereupon, conducted a desk audit for the period covered by the forms. Adjustments were made according to the Department's interpretation of 13 C.S.R. 40–81.080.

## I

The initial question is whether the Department could apply 13 C.S.R. 40–81.-080 to costs incurred prior to May 11, 1978. The inquiry focuses on Article I, § 13 of the Missouri Constitution, which the Homes argue prohibits retroactive application of the regulation. Article I, § 13 provides "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges of immunities, can be enacted." 40–81.080. Duly promulgated substantive regulations have the force and effect of laws. *See Chrysler Corporation v. Brown,* 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979); *United States v. Nixon,* 418 U.S. 683, 695, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974). *Cf. Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193 (Mo. banc 1972). While the Homes and the Administrative Hearing Commission correctly acknowledge that not all laws or regulations made pursuant thereto operating retroactively are invalid, they err in concluding that 13 C.S.R. 40–81.080 may not have retroactive application.

Statutes are generally presumed to operate prospectively, "unless the legislative intent that they be given retroactive

operation clearly appears from the express language of the act or by necessary or unavoidable implication." *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 34 (Mo. banc 1982), appeal dismissed 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942. If the presumption normally favoring prospective operation is overcome, the inquiry focuses on whether the statute falls within the proscription against retrospective laws. This constitutional ban against retrospective laws applies only when the statute takes away or impairs any existing vested right.[5] *Lincoln Credit Co. v. Peach, supra,* at 34–35; *Barbieri v. Morris,* 315 S.W.2d 711, 714 (Mo.1958); *Clark v. Kansas City, St. Louis & Co. R. Co.,* 219 Mo. 524, 118 S.W. 40 (1909); *Hope Mutual Ins. Co. v. Flynn,* 38 Mo. 483, 484 (1866).

Application of 13 C.S.R. 40–81.080 to costs incurred prior to May 11, 1978, cannot be said to take away or impair any vested right. Nursing homes participating in programs such as the Medicaid program operate at a risk. Their ability to obtain funds depends upon the federal government's willingness to continue the program. The amount of funds they obtain is also dependent upon changing federal guidelines, such as the switch to a "reasonable cost related basis." *Cf. Edgewater Nursing Center, Inc. v. Miller,* 678 F.2d 716, 717–18 (7th Cir.1982). On the state level, the nursing homes rely upon the State's continuing participating in the program.[6] In the case at bar, the Homes must have been aware of these risks. Furthermore, the Homes were advised in June of 1976 that the federal government had altered the standard for cost reimbursement. At this same time, the Homes were informed that the State's Medicaid plan would not be filed until the final federal

---

**5.** The Department contends that if there is a clear intent that a statute apply retroactively then there is an exception to the bar against retrospective laws. Such is not the case; the legislative intent is pertinent only to the construction of the statute and whether the presumption against retroactivity should not apply. This was our holding in *Lincoln Credit Co. v. Peach, supra,* and was intended by our holding

in *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409 (Mo. banc 1974).

**6.** While the Homes also have participation agreements with the state which may establish certain rights, we need not address such a possibility because neither party introduced any evidence concerning the substance or nature of any participation agreements.

regulations were published. The Homes were told that the plan would be retroactive to July 1, 1976. The import of this information must have suggested to the Homes that if they wished to continue in the Medicaid program they would have to accept reimbursement levels pursuant to a then undisclosed Medicaid plan. Knowing of this uncertainty, the Homes chose to accept the risk and cannot now be heard to complain.

■ The Homes allege that they have a vested right in an informal cost plan existing from July 1, 1976 to May 11, 1978. The Administrative Hearing Commission's finding that such an informal plan existed is in our opinion unsupported by competent and substantial evidence upon the whole record. § 536.140.2(3), RSMo Cum.Supp.1984. The Homes and the Commission rely upon the June 25, 1976, memorandum of Ewing B. Gourley. This brief memorandum is insufficient for proof of an informal cost plan. The memorandum contained general information concerning billing practices by nursing homes, procedures for rate adjustment prior to formal implimentation of the cost plan, and recommendations for accounting methods and the maintenance of statistics. The Homes were also informed that participation agreements would be revised in accordance with the cost plan. This is insufficient evidence from which to conclude the existence of an informal cost plan, and is without sufficient detail to indicate proper resolution of respondents' reimbursement claims. Although the record is unclear, apparently the amounts paid in interim payments were to be adjusted according to the amounts allowable under the plan ultimately filed with the Secretary of State's office. This fact seems clear in light of the indication in the memorandum that the cost plan would be retroactive. Because these interim payments were adjusted according to the plan when adopted, the State complied with § 208.158, RSMo 1978, which requires that payments to federally aided programs can only occur if federal funds are provided or made available to the state pursuant to a federally approved state plan.

We do not believe the federal regulations invoked by the Commission vitiate the plan. There is no evidence of federal objection to reimbursement under the plan nor is there any showing that the Department's level of reimbursement violates the federal substantive standard. 45 C.F.R. §§ 201.3(g), 205.5(b), Section 205.5(b). *Cf. Kaye v. Whalen,* 56 A.D.2d 111, 391 N.Y.S.2d 712, 717 (1977), *aff'd* 44 N.Y.2d 754, 376 N.E.2d 1327, 405 N.Y.S.2d 682 (1978). These federal regulations have not been invoked by other courts when considering reimbursement on a cost related basis before the state adopted an approvable plan pursuant to 42 U.S.C. § 1396a(a)(13)(E). *E.g., Golden Isles Convalescent Center, Inc. v. Califano,* 616 F.2d 1355 (5th Cir.1977), *rev'd sub. nom. on other grounds Florida Department of Health v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (eleventh amendment bars retroactive monetary relief against a state by a federal court). *See also Alabama Nursing Home Ass'n v. Harris, supra; Alabama Nursing Home Ass'n v. Califano, supra.* In *Kaye v. Whalen,* the court after discussing the federal regulation requiring prior approval, unheld retroactive application of the State's plan. *Kaye v. Whalen, supra,* 391 N.Y.S. at 716–17.

Having found no bar to retroactive application of 13 C.S.R. 40–81.080, we must determine whether the Medicaid Plan as set forth by the regulations was intended to operate retroactively. The conclusion that it was intended to operate retroactively is supported by numerous provisions which refer to July 1, 1976. 13 C.S.R. 40–81.-080(2)(A), (15)(a), (21)(3)1, (27)(E), (28)(B). Such construction is totally compatible with the June 26, 1976 memorandum of the then director of Division of Family Services.

## II

■ We have reviewed the issues presented by the Homes' cross-appeal and decline to disturb the findings of the Commission relative to these issues. The Homes argue that for costs incurred after

May 11, 1978, the Department improperly reduced the amount of reimbursement pursuant to 13 C.S.R. 40–81.080. The Homes contend that the regulation does not permit the confiscation of their profit from fees for providing room reservation[7] and barber and beauty shop services. They also aver that the regulation does not authorize the imposition of an upper limit on the amount of reimbursement based upon rates established by the Department during the desk audit.[8] We agree with the Commission's conclusion that such arguments lack merit; and that the Department's interpretation of the rule it was to implement is neither erroneous nor inconsistent with the regulation. The Department reduced the total allowable costs by the amount of revenue received from the two services. The clear language of the rule authorizes such a reduction. 13 C.S.R. 40–81.080(13)(A). The rule also allows the imposition of an upper limit—as determined by the Department—on the amount of reimbursement. 13 C.S.R. 40–81.080(23)(A)1. The law is well settled that nursing homes need not be reimbursed for all their costs, nor are they always entitled to their profit.[9] *See In re Madeline Marie Nursing Homes*, 694 F.2d 433, 443 (6th Cir.1982); *Massachusetts General Hospital v. Weiner*, 569 F.2d 1156, 1158–59 (1st Cir.1978); *Hempstead General Hospital v. Whalen*, 474 F.Supp. 398, 409–11 (E.D.N.Y.1979), *aff'd without op.* 622 F.2d 573 (2nd Cir.1980); *Briarcliff Haven, Inc. v. Dept. of Human Resources*, 403 F.Supp. 1355 (N.D.Ga.1975); *Haven Home, Inc. v. Department of Public Welfare*, 216 Neb. 731, 346 N.W.2d 225, 230 (1984).

On the appeal of the Department (Appellants-Cross-Respondents) we reverse holding that reimbursements for costs between July 1, 1976 and May 11, 1978, were properly made pursuant to 13 C.S.R. 40–81.080. On the appeal of the Homes (Respondents-Cross-Appellants), we affirm and approve the Department's interpretation and application of 13 C.S.R. 40–81.080 as it pertains to reimbursements for costs both between May 11, 1978 and December 31, 1978 and July 1, 1976 to May 11, 1978.

Reversed in part and affirmed in part.

HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., and GAERTNER and CRIST, Special Judges, concur.

RENDLEN, C.J., and BILLINGS, J., not sitting.

7. When patients leave the nursing home for short periods, they may reserve their bed by paying a room reservation fee.

8. There are two types of upper limits, the private pay cap and the class cap. Only the former is at issue on the cross-appeal. The nursing homes are required to maintain their private patient rate higher than their Medicaid patient rate, and the failure to do so results in an upper limit beyond which the state will not reimburse. Two of the Homes were new homes and thus under the plan were required to apply an artificially established low Medicaid rate for their first six months in operation. The Department after reviewing actual cost information, recalculated their rate at the end of the year and arrived at a Medicaid rate which was significantly higher than the rate in effect. The Department also averaged the private patient rate for the entire period and arrived at a lower rate. The result was that the artificial Medicaid rate had to be capped according to the upper limit established by the artificial private rate.

9. Amicus, Missouri Health Care Association, would have us hold, regardless of any federal law or state regulation, that § 208.152, RSMo 1978, governs the amount of reimbursement because it requires reimbursement on the basis of "reasonable cost." This argument overlooks that the Division of Family Services is given the authority to define reasonable cost, and it fails to recognize other statutory law. *See* §§ 208.-153, 208.159, RSMo 1978.