# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2456

_____

Missouri Beverage Company, Inc.,       *

      *

     Appellant,       *

      *

   v.       *

      *

Shelton Brothers, Inc.,       *

      *   Appeal from the United States

     Appellee.       *   District Court for the

      *   Western District of Missouri.

      *

_____       *

Missouri Beer Wholesalers Association; *

Missouri Wine and Spirits Association,    *

      *

     Amici on behalf of       *

     Appellant.       *

_____

Submitted: January 12, 2012

Filed: February 28, 2012

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Missouri Beverage Company (MoBev) appeals the district court's[1] order denying its motion for partial summary judgment and granting Shelton Brothers, Inc.'s (Shelton's) motion for summary judgment on MoBev's claims for violation of Missouri franchise law.[2] Because the plain language of the Missouri franchise statute at issue unambiguously requires that the general definition of "franchise" applies to liquor supplier-wholesaler relationships and the relationship between MoBev and Shelton does not satisfy this definition, we affirm.

I.

MoBev, a Missouri corporation with its principal place of business in Missouri, is a wholesale distributor of spirits, wines, beers, juices, and sodas throughout Missouri. Shelton, a Massachusetts corporation with its principal place of business in Massachusetts, supplies wholesalers with artisanal beers from around the world. In 2004, MoBev and Shelton entered into an oral agreement, the precise terms of which are in dispute. The parties agree, however, that MoBev could purchase beer from Shelton, that MoBev was not obligated to order any particular amount of beer from Shelton, and that Shelton was not required to supply any particular amount of beer.

Shelton filled beer orders placed by MoBev from 2006 through 2009. As required by Missouri law, Shelton sent the State of Missouri letters from 2004 through 2008 notifying the State of MoBev's appointment as distributor for different Shelton products in various Missouri counties. See Mo. Code Regs. Ann. tit.

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2]The Missouri Beer Wholesalers Association and Missouri Wine and Spirits Association filed an *amicus* brief in support of reversal and participated in oral arguments.

11, § 70-2.270. MoBev also conducted two sampling events focusing on Shelton's beers in 2008 or 2009. On August 8, 2008, Shelton sent an email to MoBev and other distributors thanking them for their work to build Shelton's brands and outlining a uniform policy under which Shelton would refund a credit against future invoices for products used for sampling. Although the parties never discussed MoBev's use of Shelton's name or logo in promotional literature, Shelton testified that MoBev "can always use our name if they want to" and could have used the logo had a request been made.[3] Shelton Dep. at 74-75. MoBev did not believe that it was obligated to develop Shelton's name or goodwill, and MoBev did not focus on developing Shelton. MoBev has had fifty to one hundred suppliers over the years, and MoBev's sales of Shelton's beers never exceeded 1.16% of MoBev's gross annual sales of all alcoholic products.

In January of 2010, Shelton stopped providing products to MoBev and sent a letter removing MoBev as Shelton's Missouri distributor. MoBev brought a Missouri state court action against Shelton, claiming that Shelton violated Missouri franchise law by failing to give proper notice of franchise termination, under Mo. Rev. Stat. § 407.405, and by unlawfully terminating a franchise, under Mo. Rev. Stat. § 407.413. Shelton removed the action to federal court under diversity jurisdiction. The district court denied MoBev's motion for summary judgment and granted Shelton's motion for summary judgment, concluding that the business relationship between MoBev and Shelton was not that of franchisor-franchisee under Missouri law.

---

[3]MoBev did use sales materials containing logos of various imported beers supplied by Shelton. There is no indication in the record, however, that MoBev ever used *Shelton's* name or logo in marketing its brands or products, and MoBev does not argue that it used Shelton's name or logo in such manner.

II.

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir. 2011) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co., 465 F.3d 900, 903 (8th Cir. 2006)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

The threshold issue is whether the business relationship between Shelton and MoBev constituted a franchisor-franchisee relationship under Missouri law. Mo. Rev. Stat. § 407.400(1) contains the definition of "franchise." A 1975 amendment added an express inclusion of liquor wholesalers and suppliers into the definition. The relevant excerpt of the definition is as follows, with the amended language in boldface:

> "Franchise" means a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise, **including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler," such wholesaler being a person as defined in this section, licensed pursuant to the provisions of chapter 311, to sell at wholesale, intoxicating liquor, as defined in section 311.020, to retailers, duly licensed in this state, and a "supplier," being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state**

-4-

**solicitor whose brands of intoxicating liquor are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of intoxicating liquor, or all of them, as may be specified;** except that, the term "franchise" shall not apply to persons engaged in sales from warehouses or like places of storage, **other than wholesalers as above described . . . .**[4]

Mo. Rev. Stat. § 407.400(1); see also Mo. H.B. 810 (1975) (enacted); Brown-Forman Distillers Corp. v. McHenry, 566 S.W.2d 194, 198-99 (Mo. banc 1978).

## A. Whether the general definition of "franchise" under § 407.400(1) applies to liquor supplier-wholesaler business relationships

The parties dispute whether only the criteria outlined in the statutory text specifically referring to liquor wholesalers (the specific definition) need be satisfied to demonstrate the existence of a franchise in the liquor distribution industry, or whether the criteria from the language in the original franchise legislation (the general definition)—which was unchanged by the 1975 amendment—also apply. Under the general definition, which Shelton argues applies, the existence of a franchise requires proof of the following elements: (1) a written or oral arrangement, (2) in which a person grants to another person a license to use a trademark or related characteristic, and (3) in which there is a community of interest in the marketing of goods or services. Mo. Rev. Stat. § 407.400(1). Under the specific definition, one would need to prove only (1) the existence of a commercial relationship of definite duration or continuing indefinite duration between a wholesaler and supplier to sell

---

[4]One difference exists between the language of the 1975 amendment and the current text quoted above – in 1998 the Missouri Legislature changed "spiritous liquor and wine(s)" to "intoxicating liquor" throughout the statute. Mo. H.B. 957 (1998) (enacted).

intoxicating liquor (2) wherein a wholesaler is granted the right to offer, sell, and distribute any of the supplier's brands.  Id.

Under Missouri law, "[t]he seminal rule of statutory construction is to ascertain the intent of the legislature from the language used and to consider the words used in their plain and ordinary meaning."  St. Louis Cnty. v. Prestige Travel, Inc., 344 S.W.3d 708, 713-14 (Mo. banc 2011) (citing Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 665 (Mo. banc 2010)).  When a statute's language is clear, Missouri courts give effect to its plain meaning and "refrain from applying the rules of construction unless there is some ambiguity."  Id. (quotation omitted).  "Where statutory interpretation is necessary, statutory language is considered in context and in comparison with other sections to determine its meaning."  Id. (citation omitted).

The district court correctly concluded that a plain reading of § 407.400(1) makes clear that the general definition indeed applies to franchise relationships within the liquor industry the same as it applies to all other businesses.  This is apparent from the statute's use of the word "including" after the general definition of "franchise," as opposed to "or," "except," or some other language denoting that liquor sales relationships were to be analyzed differently from relationships in other industries.  This interpretation is supported by the Missouri Supreme Court's explanation that § 407.400(1) "contains both an original, general definition of 'franchise,' applying to *all types of businesses* and not limited to liquor franchises, as well as a specific definition added by the legislature in [1975] to specifically include liquor franchises," and "[t]he statute first contains a general definition of 'franchise' applicable generally to *all types of businesses*; it then contains a specific definition of liquor distribution agreements that are included."  High Life Sales Co. v. Brown-Forman Corp., 823 S.W.2d 493, 500-01 (Mo. banc 1992) (emphasis added).  Thus, the specific definition simply illustrates a type of relationship that could be covered under the statute, provided that such relationship also satisfied the general definition of "franchise."

MoBev counters that High Life Sales actually supports its position, because the case included an analysis only of the specific definition in determining whether the relationship at issue constituted a franchise. When read in its entirety, however, the case suggests that the Missouri Supreme Court confined its analysis to the language of the 1975 amendment because the disputed issue concerned whether a liquor wholesaler's business satisfied the specific definition. See High Life Sales, 823 S.W.2d at 500-02.[5]

Even had § 407.400(1) been ambiguous concerning whether the general definition applies to liquor supplier-wholesaler relationships, examination of the statute's context further demonstrates that the general definition applies to such relationships. Before the 1975 amendment, one could have read § 407.400(1) as ambiguous with respect to whether a liquor supplier-wholesaler relationship could be a franchise, because of the text stating that "the term 'franchise' shall not apply to persons engaged in sales from warehouses or like places of storage." The 1975 amendment's explicit inclusion of language pertinent to the liquor industry served to clarify that certain business relationships in the liquor industry are not precluded from being deemed a franchise even though liquor wholesalers generally are "engaged in sales from warehouses." See McHenry, 566 S.W.2d at 197 (noting that "the passage of [the 1975 amendment] made it clear [that the liquor industry] had the same protection in this area of merchandising practices as other businesses."); see also Maude v. Gen. Motors Corp., 626 F. Supp. 1081, 1085 (W.D. Mo. 1986) (noting that

_____

[5]One unpublished district court opinion, without including any analysis or citing any authority, ruled that § 407.400(1) applies "to a wholesaler/supplier relationship for the distribution of spirituous liquor and wines, without the need to independently establish the existence of" a license or a community of interest. Mo. Conrad Liquor Co. v. Brown-Forman Corp., No. 89-0141-CV-W-6, 1990 U.S. Dist. LEXIS 3373, at *1 (W.D. Mo. 1990). We conclude that the Missouri Supreme Court's subsequent decision in High Life Sales vitiates whatever persuasive effect Missouri Conrad Liquor may otherwise have had.

"the warehouse sales exclusion proved troublesome in the liquor industry" and resulted in the 1975 amendment).

MoBev and *amici* devote large shares of their briefs to discussion of the 21st Amendment to the United States Constitution and the history of the three-tiered liquor distribution system between suppliers, wholesalers, and retailers in the United States, apparently to argue that the Missouri legislature, cognizant of this history, intended to create special franchise privileges for those in the liquor industry. However interesting that historical account may be, we do not find it relevant to the interpretation of the statutory provision at issue. We conclude that the plain language of § 407.400(1) requires liquor supplier-wholesaler relationships to satisfy the general definition to be deemed a franchise.

**B. Whether the business relationship between MoBev and Shelton satisfies the general definition of "franchise" under Missouri law**

Because the general definition of "franchise" applies to liquor supplier-wholesaler business relationships, it remains to be determined whether MoBev and Shelton's relationship satisfies that definition. It is undisputed that an oral agreement existed between the parties (though the terms of that agreement are in dispute), thus satisfying the first element of the general definition. The parties dispute the remaining two elements: whether Shelton granted MoBev a license to use a trademark or related characteristic, and whether a community of interest exists.

1. Whether Shelton granted MoBev a license to use a trademark or related characteristic

"Courts have referred to interpretations of New Jersey's very similar statutory definition of 'franchise' in interpreting the Missouri statute." Am. Bus. Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1139 (8th Cir. 1986) (citing McHenry, 566 S.W.2d at 196) (relying on interpretation of New Jersey Franchise Practices Act); ABA

Distribs., Inc. v. Adolph Coors Co., 542 F. Supp. 1272, 1287-88 (W.D. Mo. 1982)). Like § 407.400(1), the New Jersey statute also requires "the grant of a license in the franchisor's trade name," and "a community of interest in a business enterprise." Haworth, 798 F.2d at 1139-40; see N.J. Stat. Ann. § 56-10-3. "[A] hallmark of the franchise relationship is the use of another's trade name in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of the trade name." Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div., 462 A.2d 595, 599 (N.J. Super. Ct. App. Div. 1983) (citations omitted). "[N]ot every grant of permission to use a trademark in the sale of goods or services is a 'license' within the meaning of the Franchise Act . . . The license contemplated by the Act is one in which the franchisee wraps himself with the trade name of the franchisor and relies on the franchisor's goodwill to induce the public to buy." Liberty Sales Assocs., Inc. v. Dow Corning Corp., 816 F. Supp. 1004, 1009-10 (D.N.J. 1993) (quoting and citing Instructional Sys., Inc. v. Computer Curriculum Corp., 614 A.2d 124, 138-40 (N.J. 1992)).

Shelton never granted MoBev a license to use its trademark or any related characteristic. MoBev never used Shelton's name in any marketing efforts, never requested to use Shelton's name, and never received Shelton's express permission to call itself an authorized Shelton dealer or otherwise use Shelton's name. Shelton's testimony that it would have given MoBev permission to use Shelton's name had a request been made plays no part in the analysis. Moreover, MoBev stated in its district court motion papers that rather than relying on or cloaking itself with the goodwill inherent in Shelton's name, MoBev relied on its own reputation to sell Shelton's products. Pl.'s Suggestions in Opp. of Def.'s Mot. for Summ. J. ¶ 26 ("[C]ustomers do business with MoBev because they associate MoBev with good products. MoBev salespeople mention the supplier if the supplier has a reputation of carrying good quality products, with the goal of promoting the product.") (citation

omitted). Thus, it is clear that Shelton did not grant to MoBev a "license to use a trade name, trademark, service mark, or related characteristic" as a matter of Missouri law.

2. Whether Shelton and MoBev engaged in the same "community of interest"

In the absence of any discussion by the Missouri courts regarding the community of interest requirement, for guidance we consider interpretations of similar statutes. Looking again to interpretation of the very similar New Jersey franchise law:

> The community of interest signalling a franchise relationship does not imply a sharing of profits. Rather it is based on the complex of mutual and continuing advantages which induced the franchisor to reach his ultimate consumer through entities other than his own which, although legally separate, are nevertheless economically dependent upon him.

Neptune, 462 A.2d at 600-01 (internal citation omitted). From Neptune and its progeny, the Third Circuit distilled the following two-part test for determining whether a community of interest exists: "(1) the distributor's investments must have been substantially franchise-specific, and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 269 (3d Cir. 1995) (internal quotation and citation omitted). Courts interpreting the New Jersey statute have in turn sought guidance from the very similar Wisconsin Fair Dealership Law (WFDL), see Neptune, 462 A.2d at 599-600, under which a community of interest may exist under one of two circumstances: (1) "when a large proportion of an alleged dealer's revenues are derived from the dealership," or (2) "when the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not

-10-

fully recoverable upon termination."[6] Frieburg Farm Equip., Inc. v. Van Dale, Inc., 978 F.2d 395, 399 (7th Cir. 1992) (citations omitted); see Wis. Stat. § 135.02 (defining "[c]ommunity of interest" as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services"). Given the strong similarities between the "franchise" definitions in Missouri, New Jersey, and Wisconsin, we believe that the Missouri Supreme Court would determine the existence of a "community of interest" under a standard commensurate with those articulated by the Third Circuit in Cooper Distributing and the Seventh Circuit in Frieburg.

Applying either the Cooper Distributing or Frieburg standard, no community of interest existed between the parties in the marketing of Shelton's products. MoBev's sales of Shelton's products never exceeded 1.16% of MoBev's annual sales throughout the parties' relationship,[7] MoBev did not use Shelton's name in marketing during the parties' relationship, and MoBev was not required to make—and did not make—any sizeable investments particular to Shelton. In light of these circumstances, MoBev's investments cannot reasonably be deemed substantially franchise-specific, and MoBev cannot reasonably be deemed economically dependent on Shelton or to have unequal bargaining power in the relationship. In sum, then, we conclude that Shelton and MoBev's relationship was not that of franchisor-franchisee under Missouri law.

---

[6]The Frieburg court also "suppose[d] that some combination of revenues and investments could manifest a community of interest, even if neither could standing alone." Id.

[7]In contrast, the alleged franchisee in High Life Sales derived "approximately 98%" of its sales from the alleged franchisor. High Life Sales, 823 S.W.2d at 494; see also Kenosha Liquor Co. v. Heublein, Inc., 895 F.2d 418, 419-20 (7th Cir. 1990) (concluding that 5.8% of sales was insufficient to establish a franchise relationship under WFDL when no other factors weighed in favor of such a relationship).

## IV.

The judgment is affirmed.

_____