# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-1799

_____

Chandramouli Vaidyanathan

*Plaintiff - Appellee*

v.

Seagate US LLC, a Delaware limited liability company; Seagate Technology, LLC,
a Delaware limited liability company

*Defendants - Appellants*

_____

No. 11-1888

_____

Chandramouli Vaidyanathan

*Plaintiff - Appellant*

v.

Seagate US LLC, a Delaware limited
liability company; Seagate Technology,
LLC, a Delaware limited liability company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 16, 2012
Filed: August 28, 2012
_____

Before RILEY, Chief Judge, WOLLMAN and SMITH, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Chandramouli Vaidyanathan brought suit against Seagate US LLC and Seagate Technology LLC (collectively, Seagate), alleging a violation of Minnesota Statutes section 181.64, false statements as inducement to entering employment, and a common law claim of promissory estoppel. The jury returned a verdict for Vaidyanathan on his statutory claim, awarding him $1.9 million in damages. The district court entered judgment on the statutory claim, awarded Vaidyanathan attorneys' fees, and dismissed with prejudice the common law claim. Seagate appeals, arguing, among other things, that the district court submitted an erroneous jury instruction. Vaidyanathan filed a conditional cross-appeal, arguing that if a new trial is ordered on the statutory claim, his promissory estoppel claim should likewise be retried. We conclude that the district court erred in instructing the jury, and thus we reverse. We vacate the order dismissing the promissory estoppel claim and remand for a new trial on both claims. We also vacate the order granting attorneys' fees.

## I. Background

Seagate is a Delaware company that develops and manufactures hard drives. Its principal place of business is California. In late 2006, Seagate formed the Alternative Technology Group to develop "solid state memory technologies at a component level" and thereafter began developing a solid-state semiconductor drive. According to members of the group, Seagate believed that its technology was feasible by the summer of 2007 and enlisted a recruiter to assist in hiring a yield engineer.

Vaidyanathan was living in Texas in 2007, working as a yield manager at Texas Instruments, where he had worked in yield engineering since 1997. In October 2007, Seagate's recruiter contacted Vaidyanathan regarding the company's research and development (R&D) yield engineer position. The recruiter explained that the position involved working on Seagate's new semiconductor drive. He thereafter sent Vaidyanathan a job description that set forth specific job responsibilities, which were similar to Vaidyanathan's duties as a yield engineer at Texas Instruments.

The integration manager for the Alternative Technology Group, Antoine Khoueir, then contacted Vaidyanathan to discuss the position. According to Vaidyanathan, Khoueir said that the position involved yield engineering work and that the person hired would perform the duties listed in the job description upon joining Seagate. When Vaidyanathan later interviewed at Seagate, its representatives informed him that he would be working as a yield engineer when he arrived at Seagate. Because of confidentiality restrictions, however, Seagate did not disclose the specifics of the solid-state semiconductor drive.

Seagate offered Vaidyanathan the position, and after some negotiation, he accepted. He left his job and moved his family from Texas to Minnesota in early 2008. Upon arriving at Seagate in February 2008, however, Vaidyanathan discovered that the solid-state semiconductor drive was not adequately developed to require a yield engineer.

In November 2008, Seagate notified Vaidyanathan that it planned to eliminate his position. Seagate explained that Vaidyanathan "was hired to lead a yield/product engineering department/team in Integration; however this charter never came to fruition . . . ." Vaidyanathan was terminated in December 2008. Seagate eventually disbanded the Alternative Technology Group and laid off the group's employees.

In 2009, Vaidyanathan sued Seagate in state court, asserting the two claims set forth above. With respect to the statutory claim, false statements as inducement to entering employment, Minnesota law provides:

> It shall be unlawful for any person . . . to induce, influence, persuade, or engage any person . . . to change from any place in any state . . . to any place in this state, to work in any branch of labor through or by means of knowingly false representations . . . concerning the kind or character of such work . . . .

Minn. Stat. § 181.64; see § 181.65 (providing a right of action for recovery of damages sustained in consequence of violations of § 181.64). Vaidyanathan's complaint alleged that Seagate made knowingly false representations concerning the kind or character of the position it offered to him and that Seagate thus induced, influenced, and persuaded him to accept employment and relocate from Texas to Minnesota. Seagate removed the case to federal court, where it proceeded to trial.

At trial, Vaidyanathan testified that he was told repeatedly that he would perform the duties of a R&D yield engineer when he arrived at Seagate, but that he did not perform any such work during his tenure. Vaidyanathan also testified that he would be unable to find work as a yield engineer in the future. According to Vaidyanathan, semiconductor technology evolves at a fast pace, with the result that his hiatus in working as a yield engineer in the semiconductor field essentially ruined his career.

Khoueir testified that he represented that Vaidyanathan would perform yield engineering duties when he arrived at Seagate because Khoueir believed that the technology was ready for yield engineering. According to Seagate's witnesses, Vaidyanathan performed yield engineering work during his employment, and they did not misrepresent the work or the state of the technology.

As recounted above, the jury returned a verdict in favor of Vaidyanathan on the statutory claim, and the district court later dismissed the promissory estoppel claim with prejudice. The court denied Seagate's post-trial motion for judgment as a matter of law, a new trial, or remittitur and awarded Vaidyanathan attorneys' fees.

## II. Discussion

### A. Jury Instruction

Seagate argues that it is entitled to a new trial because the district court erred by submitting a jury instruction that incorrectly defined the phrase "knowingly false representation." We review the district court's ruling on a jury instruction for abuse of discretion. M.M. Silta, Inc. v. Cleveland Cliffs, Inc., 572 F.3d 532, 536 (8th Cir. 2009). We consider "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Id. (quoting Bass v. Flying J, Inc., 500 F.3d 736, 739 (8th Cir. 2007)). We will reverse only if an instructional error has affected a party's substantial rights. Id. Minnesota law applies to the substance of the instructions in this diversity case, and the instructions "must fairly and adequately represent the law of the forum state." Linden v. CNH Am., LLC, 673 F.3d 829, 836 (8th Cir. 2012) (quoting McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010)).

Over Seagate's objection, the district court instructed the jury that "[a] person's statement is knowingly false if, at the time the false representation was made, the person knew the representation was false or the person represented that he knew about the facts when he did not know if the facts were true or false." Jury Instructions at 10. In fashioning the instruction, the district court relied upon the fraud and misrepresentation instruction from the Minnesota Jury Instruction Guides, Civil. The court determined that "the knowledge element of knowingly is most akin to a fraud in the inducement case[.]" In such a case, the plaintiff must prove that the person

-5-

knew that the representation is false or "assert[ed] it as of his own knowledge without knowing whether it is true or false." Davis v. Re-Trac Mfg. Corp., 149 N.W.2d 37, 39 (Minn. 1967). During the course of its deliberations, the jury submitted the following question to the district court: "Is it a misrepresentation if you thought your statement was true but did not know if the facts were true or false." The court responded by repeating the challenged instruction and adding, "You cannot have a knowingly false representation if you think the statement is true."

Seagate objected to the district court's definition on the ground that it "almost get[s] to a known or should have known standard, which clearly is not the standard in this case." After the jury submitted its question, Seagate argued that "the statute says knowingly." Counsel went on to argue, "[T]he Court's definition has created the confusion, not the statutory language. So, if anything is said to the jury that we think it should be . . . you should consider whether it is knowingly misrepresented by using your common understanding of the word 'knowingly.'" On appeal, Seagate maintains that the instructions were erroneous because the plain language of the statute requires that the defendant know that the representation is false.

We agree that the phrase "knowingly false representations" is not ambiguous: The plain language of the statute requires that the employer know that the representation is false. Cf. Ryan v. Lefebvre, 303 N.W.2d 462, 467 (Minn. 1981) ("Appellant may be said to have violated section 210A.02 'knowingly' if he knew that his literature falsely claimed or implied that he had party support or endorsement."); Bank v. Egan, 60 N.W.2d 257, 259 (Minn. 1953) ("[T]he correct interpretation of the statute requires us to hold that the word 'knowingly' refers to the falsity of the statement and that, to find a violation of the statute it must be determined that the violator knew that the statement published was false.") (interpreting Minn. Stat. § 211.08). Although a district court does not necessarily abuse its discretion in defining statutory elements for the jury, we conclude that the district court did so here because

the instruction did not fairly and adequately represent Minnesota law. See Linden, 673 F.3d at 836 (standard of review).

Under Minnesota law, "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. "We determine legislative intent 'primarily from the language of the statute itself.'" Brayton v. Pawlenty, 781 N.W.2d 357, 363 (Minn. 2010) (quoting Gleason v. Geary, 8 N.W.2d 808, 816 (Minn. 1943)). If the language is clear and unambiguous, "statutory construction is neither necessary nor permitted and [we] apply the statute's plain meaning." Id. (quoting Am. Tower, L.P. v. City of Grant, 636 N.W.2d 309, 312 (Minn. 2001)). But if the statute is ambiguous—that is, if it is susceptible to more than one reasonable interpretation—we apply canons of construction to discern the legislature's intent. Id. (citing Minn. Stat. § 645.16; Amaral v. St. Cloud Hosp., 598 N.W.2d 379, 384 (Minn. 1999).

Vaidyanathan has not explained how the statute is ambiguous, such that statutory construction might be permitted. At oral argument before this court, Vaidyanathan argued that "knowingly false" had acquired a special meaning under Minnesota law and that the district court thus properly instructed the jury on the special meaning. See Minn. Stat. § 645.08 ("[T]echnical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning[.]"). To construe the statute, however, the phrase "knowingly false representations" must be susceptible to more than one reasonable interpretation. Because it is not, the statute's plain language controls. Cf. Kratzer v. Welsh Cos., 771 N.W.2d 14, 21 (Minn. 2009) (rejecting appellant's argument that the terms "knowledge and consent" are "technical terms with specialized meanings that have been regularly interpreted under the common law"). As set forth above, section 181.64 requires that the defendant know that the representation is false. We thus conclude that the jury instruction defining the phrase "knowingly false representations" was contrary to Minnesota law.

We hold that the supplemental instruction did not cure the error because it did not require the jury to conclude that Seagate knew its representations were false. Although the jury was required to rule for Seagate if it found that Seagate believed its representations to be true, the initial and supplemental instructions directed the jury to return a verdict for Vaidyanathan if it found that Seagate did not know whether its representations were true or false. This is a basis of liability not comprehended by the language of section 181.64, and thus the instructions as a whole did not fairly and adequately submit the case to the jury.

We further conclude that the error affected Seagate's substantial rights and a new trial is warranted. "[A] new trial is necessary only when the errors misled the jury or had a probable effect on a jury's verdict." Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006). The jury should have been instructed that it could hold Seagate liable if Seagate knew that its representations were false. Whether Seagate's representations were knowingly false was the most contested issue in this case, and the jury's question indicates that it deliberated about whether Seagate knew or believed its representations were false. The inaccurate instructions thus likely affected the jury's deliberations and its resulting verdict, and so we must reverse and remand for a new trial.[1]

---

[1]In his cross appeal, Vaidyanathan argues that the instruction he proposed to define "intent" should be omitted. Given our decision in this case, we doubt that he will request such an instruction on remand.

### B. Cross Appeal

Vaidyanathan argues that the order dismissing his promissory estoppel claim should be vacated if a new trial is granted. We agree. As set forth above, the promissory estoppel claim was submitted to the court and decided after the jury returned its verdict. The district court described Vaidyanathan's equitable theory of recovery as an alternative to his fraudulent inducement theory, and its opinion incorporates the jury's verdict. When the district court dismissed the promissory estoppel claim with prejudice, it found that Seagate made a clear and definite promise to Vaidyanathan, that Vaidyanathan relied on that promise to his detriment, but that enforcement of the promise was not necessary to prevent injustice. It is unclear whether the district court's ruling would have been the same on this claim had the jury not found in Vaidyanathan's favor on the statutory claim.

We have considered and find to be without merit Vaidyanathan's remaining arguments.

### III. Conclusion

We reverse the judgment and remand the case for a new trial. The orders dismissing the promissory estoppel claim and awarding attorneys' fees are vacated.

SMITH, Circuit Judge, dissenting.

I respectfully dissent from the majority's opinion that the district court's jury instruction that defined the phrase "knowingly false representation" is contrary to Minnesota law. The majority states that "the phrase 'knowingly false representations' is not ambiguous: The plain language of the statute requires that the employer know that the representation is false." I agree with the majority that the phrase is unambiguous but, "apply[ing] the plain and ordinary meaning of the words used,"

*Johnson v. Paynesville Farmers Union Co-op Oil Co.*, Nos. A10-1596, A10-2135, 2012 WL 3101667, at \*10 (Minn. Aug. 1, 2012) (slip copy), I reach a different conclusion.

A "false representation" or "misrepresentation" is defined as either "[t]he act of making a false or misleading statement about something, usu[ally] with the intent to deceive" or "an assertion that does not accord with the facts." *Black's Law Dictionary* 1016 (7th ed. 1999). Such a misrepresentation is "knowing" if it is "deliberate" or "conscious." *Id.* at 876. The district court instructed the jury that "[a] person's statement is knowingly false if, at the time the false representation was made, the person knew the representation was false or the person represented that he knew about the facts when he did not know if the facts were true or false." It is undisputed that if the person making the representation "knew the representation was false," it was a "knowingly false representation." And it is equally true that if the person "represented that he knew about [certain] facts when he did not know" about those facts, he made a "knowingly false representation." In other words, the person deliberately made "an assertion" (i.e., that he knew about certain facts) "that d[id] not accord with the facts" (i.e., he did not know about those facts). *Black's Law Dictionary*, *supra*, at 1016.

During jury deliberations, the district court clarified that "[y]ou cannot have a knowingly false representation if you think the statement is true." This also comports with the plain and ordinary meaning of "knowingly false representation," which requires that the misrepresentation be "deliberate" or "conscious." *Black's Law Dictionary*, *supra*, at 876.

For these reasons, I respectfully dissent.

_____