# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2979

No. 22-3067

_____

Major Brands, Inc.

*Plaintiff - Appellee/Cross Appellant*

v.

Mast-Jägermeister US, Inc.; Southern Glazers Wine and Spirits, LLC;
Southern Glazers Wine and Spirits of Missouri, LLC

*Defendants - Appellants/Cross Appellees*

------------------------------

American Craft Spirits Association; Brewers Association; Wine Institute;
Distilled Spirits Council of the United States; Missouri Craft Brewers Guild

*Amici on Behalf of Appellant(s)*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: February 15, 2024
Filed: November 8, 2024

_____

Before LOKEN, COLLOTON,[1] and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Major Brands, Inc. ("Major Brands") is a Missouri-licensed liquor distributor. It operates only in Missouri, where it is the second-largest liquor distributor in the State, with a portfolio of over one thousand brands. Mast-Jägermeister US, Inc. ("MJUS") is a supplier of the German-made herbal liqueur Jägermeister.[2] Major Brands began distributing Jägermeister in Missouri in the 1970s and was the brand's exclusive Missouri distributor until 2018. Over the course of these forty-plus years, Major Brands and MJUS never entered into a written contract governing their distribution relationship.

Southern Glazers Wine and Spirits, LLC ("Southern Glazers") is a liquor distributor with a national footprint, operating in more than forty States including Missouri. By 2017 Southern Glazers was distributing Jägermeister in twenty-one States, accounting for approximately one half of all of MJUS's distribution. In April 2017, Southern Glazers proposed a national consolidation whereby Southern Glazers would serve as MJUS's sole distributor in the United States. MJUS eventually agreed, and in January 2018, MJUS and Southern Glazers signed a five-year agreement appointing Southern Glazers as national distributor, including in Missouri.[3] MJUS terminated Major Brands as its Missouri distributor, effective

_____

[1]Judge Colloton became chief judge of the Circuit on March 11, 2024. See 28 U.S.C. § 45(a)(1).

[2]From 1974 to 2016, Jägermeister was imported and sold to U.S. wholesalers by Sidney Frank Importing Co. In 2017, Sidney Frank Importing Co. became MJUS.

[3]The parties signed a separate indemnification agreement in which Southern Glazers agreed to indemnify MJUS against any claim "in any way relating to or arising out of any termination or cessation of business with [an] existing distributor."

March 31, 2018, and appointed Southern Glazers Missouri, a wholly owned subsidiary of Southern Glazers and a Major Brands competitor, as Jägermeister's exclusive distributor in the State of Missouri.

Major Brands brought this action in state court against MJUS, Southern Glazers, and Southern Glazers Missouri (collectively, "Defendants"), alleging wrongful termination in violation of Missouri franchise law, conspiracy to violate Missouri franchise law, and tortious interference with the MJUS-Major Brands franchise relationship. Defendants removed the case to federal court. After the district court dismissed additional defendants Major Brands had fraudulently joined to defeat diversity jurisdiction, the case proceeded to a six-day jury trial. The jury returned an $11.75 million verdict for Major Brands, and the district court denied Defendants' motions for judgment as a matter of law or a new trial. Defendants appeal, raising numerous issues. Concluding that the district court prejudicially erred in instructing the jury on an essential element of a claim under the Missouri Franchise Act, we reverse and remand for a new trial.

## I. The Claims at Issue

Six claims were submitted to the jury: (1) violation of Missouri franchise law against MJUS; (2) tortious interference with a franchise relationship against Southern Glazers Missouri; (3) tortious interference with a franchise relationship against Southern Glazers; (4) civil conspiracy to violate Missouri franchise law against MJUS and Southern Glazers Missouri; (5) civil conspiracy to violate Missouri franchise law against MJUS and Southern Glazers; and (6) unjust enrichment against MJUS (the district court instructed the jury to find for MJUS if they found in favor of Major Brands on the franchise violation claim). The jury returned a verdict for Major Brands on the first five counts, assessing Major Brands's damages at $11.75 million. Defendants moved for judgment as a matter of law or, in the alternative, for a new trial and/or remittitur, arguing that Major Brands failed to substantiate its

claims and that Defendants are entitled to a new trial because of prejudicial instructional and evidentiary errors. The district court upheld the jury verdict and subsequently granted Major Brands's motion for an award of attorney's fees. See Mo. Rev. Stat. § 407.413(3). Defendants appealed and Major Brands filed timely notice of a conditional cross-appeal challenging two of the district court's Missouri franchise law rulings. See Fed. R. App. P. 4(a)(3).

We review the denial of a motion for judgment as a matter of law *de novo*, using the same standard as the district court. Wash Sols., Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 892 (8th Cir. 2005). "We review the district court's denial of a motion for a new trial for abuse of discretion." Id.

## II. Missouri Franchise Law

Central to Major Brands's action is its allegation that the business relationship between MJUS and Major Brands was one of franchisor-franchisee under the Pyramid Sales Schemes subchapter of the Missouri Merchandise Practices Act, Mo. Rev. Stat. §§ 407.400-.420. Like other State franchise laws, Missouri's laws were "designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power," an effort "to protect those that could not otherwise protect themselves." High Life Sales Co. v. Brown-Forman Corp., 823 S.W.2d 493, 498 (Mo. banc 1992), quoting Elec. & Magneto Serv. Co. v. AMBAC Int'l Corp., 941 F.2d 660, 663 (8th Cir. 1991). The statute affords franchisees protections such as requiring the franchisor to provide 90-days written notice of termination (with limited exceptions). See § 407.405.

Missouri employs a statutory "three-tier" liquor distribution model. A liquor supplier such as MJUS cannot sell directly to Missouri retailers or consumers. Rather, it must sell its products to Missouri-licensed liquor wholesalers such as Major Brands, who in turn sell and deliver liquor products to retailers who are licensed to

-4-

sell alcohol to consumers. See Liquor Control Law, Mo. Rev. Stat. Ch. 311; see generally Sarasota Wine Mkt., LLC v. Schmitt, 987 F.3d 1171, 1176 (8th Cir.), cert. denied, 142 S. Ct. 335 (2021). A 1975 amendment to the Missouri franchise laws expressly included liquor wholesalers and suppliers in the definition of "franchise," § 407.400(1), and provided that a liquor supplier franchisor may only terminate a liquor wholesaler franchisee for "good cause," § 407.413(2). Major Brands alleges that its relationship with MJUS was a protected franchise under § 407.400(1) and that MJUS terminated the relationship without "good cause" in violation of § 407.413(2).

To prove this claim, Major Brands must establish that its relationship with MJUS fell within Missouri's statutory definition of a franchise. Three elements are required to meet the general definition: (1) the parties must have a "written or oral arrangement for a definite or indefinite period;" (2) one party must grant to another "a license to use a trade name, trademark, service mark, or related characteristic;" and (3) there must be "a community of interest in the marketing of goods or services." Mo. Rev. Stat. § 407.400(1).

### III. Franchise Law Jury Instruction Issues

The district court instructed the jury on the elements of a liquor distribution franchise relationship under Missouri law in Instructions 13 and 14. Instruction 13 is the required verdict director for Major Brands's claim of a Missouri franchise law violation, and Instruction 14 provides relevant definitions:

### Instruction No. 13

On plaintiff Major Brands, Inc.'s claim for violation of the Missouri Franchise Act against defendant [MJUS], your verdict must be for plaintiff Major Brands if you believe:

*First*, Major Brands is a wholesaler licensed . . . to sell at wholesale intoxicating liquor to retailers duly licensed in Missouri, and

*Second*, [MJUS] is a supplier engaged in the business as a manufacturer . . . whose brands of intoxicating liquor are distributed through duly licensed wholesalers in Missouri, and

*Third*, a written or oral commercial relationship of definite duration or continuing indefinite duration existed between Major Brands and Mast-Jägermeister wherein:

(a) Major Brands was granted the right to offer, sell, and distribute within Missouri or any designated area thereof [MJUS's] brands of spirit(s);

(b) Mast-Jägermeister granted Major Brands a license, as that term is defined in Instruction No. 14, to use Mast-Jägermeister's trade names, trademarks, or related characteristics, and

(c) there was a community of interest, as that phrase is defined in Instruction No. 14, between Mast-Jägermeister and Major Brands in the marketing of Mast-Jägermeister's brand(s) of spirits at wholesale, retail, by lease, agreement, or otherwise . . . .

## Instruction No. 14

The term "license," as used in Instruction No. 13, means permission to use Mast-Jägermeister's trade names, trademarks, or related characteristics in such a manner as to create a reasonable belief on the part of alcohol retailers or the consuming public that there was a connection between Mast-Jägermeister and Major Brands by which Mast-Jägermeister vouched for the activity of Major Brands relating to the Mast-Jägermeister brand(s) of spirits.

The phrase "community of interest," as used in Instruction No. 13, means Major Brands' investments in the Mast-Jägermeister brand(s) of spirits were substantially specific to the brand(s), and Major Brands was

required to make those investments by the parties' agreement or the nature of the business.

On appeal, Defendants raise multiple challenges to Instructions 13 and 14, only one of which requires discussion. In a diversity action, "Missouri law applies to the substance of the instructions. Federal law governs the review of the discretion exercised in refusing or admitting such instructions." Scott v. Dyno Nobel, 108 F.4th 615, 628 (8th Cir. 2024) (quotation omitted). "We consider whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Vaidyanathan v. Seagate US LLC, 691 F.3d 972, 976 (8th Cir. 2012) (quotation omitted). We will reverse only if an instruction error affected a party's substantial rights. Id.

MJUS argues that "Instructions 13 and 14 were improper because they did not fairly or adequately explain the Missouri Franchise Act's community of interest" requirement. We considered the community-of-interest requirement in Missouri Beverage Co. v. Shelton Bros., 669 F.3d 873, 879-81 (8th Cir. 2012) (Shelton). Noting "the absence of any discussion by the Missouri courts" regarding this element, we turned for guidance to judicial interpretations of the New Jersey Franchise Practices Act, N.J. Stat. Ann. § 56:10-3, and the Wisconsin Fair Dealership Law, Wis. Stat. § 135.02, State statutes that similarly define a franchise as requiring a community-of-interest between franchisor and franchisee. Id. at 879.[4]

In Cooper Distributing Co. v. Amana Refrigeration, Inc., the Third Circuit developed a two-part test for determining whether, under New Jersey law, the community-of-interest requirement had been met: "(1) the distributor's investments

---

[4]Courts interpreting Missouri franchise law have often looked to States with similar statutory definitions -- most often New Jersey and Wisconsin. See, e.g., Am. Bus. Interiors, Inc. v. Haworth Inc., 798 F.2d 1135, 1139-41 (8th Cir. 1986); Brown-Forman Distillers Corp. v. McHenry, 566 S.W.2d 194, 196 (Mo. banc 1978).

must have been substantially franchise-specific, and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business." 63 F.3d 262, 269 (3d Cir. 1995) (citations and quotations omitted). The Seventh Circuit, interpreting the Wisconsin Fair Dealership Law, similarly concluded that a community of interest may exist in one of two circumstances: (1) "when a large proportion of an alleged dealer's revenues are derived from the dealership," or (2) "when the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination." Frieburg Farm Equip., Inc. v. Van Dale, Inc., 978 F.2d 395, 399 (7th Cir.1992) (citations omitted).

We concluded in Shelton, "[g]iven the strong similarities between the 'franchise' definitions in Missouri, New Jersey, and Wisconsin, we believe that the Missouri Supreme Court would determine the existence of a 'community of interest' under a standard commensurate" with the Cooper and Frieburg tests. 669 F.3d at 880. The Supreme Court of Missouri has not issued an opinion concerning the parameters of community of interest under Missouri law subsequent to our opinion in Shelton.

At first blush, Instruction 14's definition of community of interest appears to be consistent with the two-part test articulated in Cooper, whose first prong requires that "the distributor's investments must have been substantially franchise-specific." 63 F.3d at 269. But Instruction 14 contains a significant modification -- it requires that Major Brands's investments *in the Jägermeister brand(s) of spirits* be "substantially specific to the brand(s)." MJUS argues that instructing the jury that "community of interest" simply means that Major Brands's investments in the Jägermeister brand were "substantially specific to the brand" failed to "instruct the jury to determine whether Major brands made substantial investments not recoverable upon termination," which are the "only [] types of investments [that] indicate a community of interest." We agree.

-8-

In formulating its test in Cooper, the Third Circuit looked to the Supreme Court of New Jersey's explanation of community of interest:

> Community of interest exists when the terms of the agreement between the parties or the nature of the franchise business requires the licensee, in the interest of the licensed business's success, to make *a substantial investment in goods or skills that will be of minimal utility outside the franchise.*

63 F.3d at 269 (emphasis added), quoting Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 142 (N.J. 1992) (ISI). The first Cooper prong -- "the distributor's investments must have been substantially franchise-specific" -- encompasses *all* of the distributor's investments in the franchised business, not just those investments in the supplier's brand(s).[5]

Community of interest is a "broad, elastic and elusive" concept, but "its import can be understood in the context of the nature of franchising and the abuses to which this form of business enterprise is singularly susceptible and which were intended to be remedied" by franchise laws. Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div., 462 A.2d 595, 600-01 (N.J. Super. App. Div. 1983). The community of interest concept "is critical in distinguishing franchises from other types of business relationships." ISI, 614 A.2d at 140. The community-of-interest

___

[5]Looking to the Seventh Circuit's Frieburg test -- a standard we concluded in Shelton was also applicable to Missouri franchise law -- confirms the scope of the first prong of the Cooper test. The Frieburg court determined that a community of interest may exist in one of two circumstances under the Wisconsin Fair Dealership Law, the second being "when the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination." 978 F.2d at 399. Again, the focus of the test is on whether the investments are substantially specialized *to the franchisee's business*.

requirement serves to limit the application of franchise laws and "ensures that [their] protections apply only to those business relationships that involve a higher level of financial interdependence than the typical vendor-vendee relationship." Baldewein Co. v. Tri-Clover, Inc., 606 N.W.2d 145, 151 (Wis. 2000).

Our decision in Shelton adopted this understanding of Cooper and Frieburg. We determined that "[the distributor] was not required to make -- and did not make -- any *sizeable investments* particular to [the supplier]" and thus concluded that "[the distributor's] investments cannot reasonably be deemed substantially franchise-specific." 669 F.3d at 880 (emphasis added). We noted that "[t]he community of interest signaling a franchise relationship . . . is based on the complex of mutual and continuing advantages which induced the franchisor to reach his ultimate consumer through entities other than his own which, although legally separate, are nevertheless economically dependent upon him." Id. at 879, quoting Neptune, at 600-01. "[T]he peculiar tension in the franchise relationship is that a true franchisee devotes much of its capital to investments that are only valuable to it if it remains a licensee." N.J. Am., Inc. v. Allied Corp., 875 F.2d 58, 62 (3d Cir. 1989).

Applying the Cooper or Frieburg standard, we concluded there was no community of interest in the marketing of the supplier's liquor products because the supplier's products never exceeded 1.16% of the distributor's annual sales and the distributor was not required to make, and did not make, any sizeable investments particular to the supplier:

> In light of these circumstances, [the distributor's] investments cannot reasonably be deemed substantially franchise-specific, and [the distributor] cannot reasonably be deemed economically dependent on [the supplier] or to have unequal bargaining power in the relationship.

In sum . . . [the supplier/distributor] relationship was not that of franchisor-franchisee under Missouri law.

669 F.3d at 880.

Applying this controlling authority, we conclude that Instruction 14 did not adequately define the community-of-interest requirement. By instructing the jury to consider only whether Major Brands's investments "were substantially specific to the brand(s)," the instruction failed to require consideration of the distributor's degree of economic dependence on this particular supplier relationship and whether, if the supplier ended the relationship, the distributor would suffer "severe economic consequences." Frieburg, 978 F.2d at 399. To accurately assess whether the community of interest required by Missouri franchise law exists, the inquiry should not be limited to the distributor's investments in the supplier's brand. Though we do not hold that "economic dependence" is a separate element that must be found for a community of interest to exist, "economic dependence [is] perhaps the most important factor in determining whether a community of interest exists." Cooper, 63 F.3d at 272 (quotation omitted). It is a distributor's substantial investments in the franchise supplier's brands that make it economically dependent on the supplier and create "the consequent vulnerability of the [distributor] to an unconscionable loss of his tangible and intangible equities." Neptune, 462 A.2d at 601.[6]

We further conclude that this instruction error affected Defendants' substantial rights because it "misled the jury or had a probable effect on a jury's verdict." Vaidyanathan, 691 F.3d at 978 (quotation omitted). The parties spent significant time at trial addressing Major Brands's investments. The incorrect community of interest

_____

[6]That a distributor has substantial franchise-specific investments or derives a high proportion of its revenue from the franchise relationship are separate indicators of economic dependence, as the Frieburg court recognized in adopting an either/or test. See Shelton, 669 F.3d at 880, quoting Frieburg, 978 F.2d at 399.

-11-

instruction misstated Missouri law and improperly broadened the scope of Missouri's statutory definition of a franchise. Moreover, the prejudicial error in Instruction 14 had a domino effect on all claims submitted to the jury. The Instruction 14 definitions were incorporated by reference in Instruction 13, the verdict director on the franchise claim. Instruction 13 was incorporated into Instructions 15 and 16 that governed the conspiracy to violate Missouri franchise law claim. Instructions 17 and 18 instructed that the existence of a Missouri franchise is an element of Major Brands's tortious interference claims. See Mo. Rev. Stat. § 407.413(2); Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250-52 (Mo. banc 2006). Therefore, the error in Instruction 14 requires us to vacate the judgment and remand for a new trial on all claims. See Gross v. FBL Fin. Servs., Inc., 588 F.3d 614, 621 (8th Cir. 2009) ("if claims and counterclaims are inextricably intertwined, then it could be unfair to order a new trial on only a portion of the case.").

Major Brands argues that any economic dependence requirement, whether explicit or implicit, by requiring consideration of all of a distributor's investments, would "violate Missouri's three-tier system for the distribution of liquor, in which liquor wholesalers like Major Brands are part of an ***independent*** middle tier that is not controlled by, or dependent upon, liquor suppliers." We disagree. Missouri's three-tier system prohibits members of one tier from having a "financial interest" in a member of a higher or lower tier but does not require complete independence; some level of dependence is inherent in a supplier/distributor business relationship. See Mo. Rev. Stat. § 311.060; see generally Sarasota Wine Mkt., 987 F.3d at 1176. The community of interest required to qualify as a Missouri franchise relationship involves a relationship in which the supplier has no financial interest but exerts economic control over a distributor through implicit or explicit threats of termination. This interpretation of the Missouri Franchise Act bolsters the independence of the three tiers by ensuring that distributors are protected from abusive pressures.

In its cross-appeal, Major Brands further argues the district court erred by requiring Major Brands to meet the general definition of franchise in Mo. Rev. Stat. § 407.400(1), as well as the definition specific to liquor wholesalers in § 407.413. As Major Brands acknowledges, we explicitly rejected this argument in Shelton, holding that "the plain language of the Missouri franchise statute . . . unambiguously requires that the general definition of 'franchise' applies to liquor supplier-wholesaler relationships." 669 F.3d at 875. Major Brands cites no subsequent decision by the Supreme Court of Missouri that calls this holding into question. Rather, it argues we "must overturn" our decision in Shelton, which was based on a "material misreading" of the Supreme Court of Missouri's 1992 decision in High Life Sales v. Brown-Forman. This contention is without merit. "[A]bsent an intervening opinion by a [state] court, we are bound by a prior panel's interpretation of state law." Neidenbach v. Amica Mut. Ins. Co., 842 F.3d 560, 566 (8th Cir. 2016) (quotation omitted). We deny Major Brands's motion to supplement the record with court records allegedly supporting this foreclosed argument.

Because we remand the case for a new trial, we decline to consider the remaining arguments raised by Defendants on appeal, including alleged evidentiary errors and additional instruction errors. On remand, these issues are virtually certain to recur on a different trial record, and we decline to issue an advisory opinion based on this trial record. See Ventura v. Kyle, 825 F.3d 876, 891 n.13 (8th Cir. 2016) (Smith, J., concurring), cert. denied, 580 U.S. 1054 (2017); United States v. Fawbush, 634 F.3d 420, 421 n.2 (8th Cir. 2011) (evidentiary issue).

For the foregoing reasons, we reverse the district court's denial of Defendants' motions for a new trial, vacate the jury's verdict and the court's award of attorney's fees and costs to Major Brands, and remand to the district court for a new trial.

_____