# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1192

———————————————

Pinnacle Imports, LLC

*Plaintiff - Appellant*

v.

Share A Splash Wine Co., LLC

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: January 16, 2025
Filed: May 8, 2025

——————————

Before GRASZ, STRAS, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

Pinnacle Imports, LLC is a Missouri liquor distributor that made an oral agreement with California-based wine supplier Share A Splash Wine Co., LLC in 2013. Pinnacle president Paul William Kniep testified that Splash appointed it as its exclusive distributor for Missouri, with Pinnacle promising to make "all good faith efforts to sell the most wine that [could] be sold for [Splash's] brand[s] in the State of Missouri."

Pinnacle distributed Splash's wines from its Overland headquarters and its Kansas City warehouse. Under Missouri law, it is illegal for distributors to sell directly to the public, *see* Mo. Rev. Stat. § 311.180, so Pinnacle typically went to its retail clientele—restaurants, private clubs, and independent retailers—to promote Splash's wine. Kniep explained that sales representatives' work generally entailed visits "with various clients presenting Pinnacle products" which was "done face-to-face, pouring samples." But he said that Pinnacle occasionally hosted customers at its Overland facility.

Splash sent Pinnacle a notice of termination in March 2021 to be effective that June, telling Pinnacle that it was going to pull its products from the Missouri market. But Splash instead appointed a competitor to sell its products in Missouri.

Pinnacle sued, alleging Splash violated the Missouri Franchise Act when it terminated their agreement without good cause, Mo. Rev. Stat. § 407.413(2). To win, Pinnacle must first prove that its relationship with Splash was a "franchise," meaning a written or oral arrangement, "in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services." *Id.* § 407.400(1); *see Mo. Bev. Co. v. Shelton Bros.*, 669 F.3d 873, 877 (8th Cir. 2012). "[A] commercial relationship" is not a franchise if it "does not contemplate the establishment or maintenance of a place of business within the state of Missouri." Mo. Rev. Stat. § 407.400(1). The term "place of business" is defined as "a fixed, geographical location at which goods, products or services are displayed or demonstrated for sale." *Id.*

The district court granted summary judgment in favor of Splash, holding that there was no franchise because Pinnacle did not have a "place of business" as defined by the Act. Specifically, the district court found that Pinnacle had not "displayed or demonstrated for sale" Splash's wines at either of its Missouri locations because its "regular course of business was to go to the customer rather than displaying the

-2-

products for the customers to see." Reviewing *de novo*, we reverse. *See Mo. Bev. Co.*, 669 F.3d at 876.

The Act doesn't define the terms "displayed or demonstrated," so we give the words "their plain and ordinary meaning[s] as derived from the dictionary." *State v. Heathcock*, 708 S.W.3d 163, 167 (Mo. banc. 2025) (citation omitted). *Merriam-Webster* defines "display" as "to put or spread before the view" and "demonstrate" to include "show[ing] or prov[ing] the value or efficiency of [something] to a prospective buyer." *Merriam-Webster's Collegiate Dictionary* 335, 308 (10th ed. 1993); *see American Heritage College Dictionary* 400, 370 (3d ed. 1997) (defining "display" as "[t]o present or hold up to view" and "demonstrate" to include "show[ing] the use of (an article) to a prospective buyer").

There is a genuine dispute whether Pinnacle "demonstrated" goods for sale at its Overland facility. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Although "the vast majority of [Pinnacle's] work is going to [its] customers," Kniep testified at his deposition that:

> Now, have there ever been times when we've had a customer come to our conference room and do what we call a warehouse kick the boxes tour, where they go through and choose some wines that they've not seen before that look compelling to them, that happens once in a very great while.

In a later affidavit, Kniep further explained that "Pinnacle occasionally hosted current or potential account representatives at its Overland facility for tastings and viewings of certain products, including . . . one or more of the Splash Brands."[1]

---

[1]We disagree with the district court's decision to exclude Kniep's affidavit as a sham. The affidavit did not contradict his testimony or create a dispute of fact where none existed before. *See Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020) ("An affidavit is a sham affidavit if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue

That's enough evidence to create a factual dispute over whether Pinnacle had "show[ed] or prove[d] the value" of Splash's wines to Pinnacle's customers.

The district court seemed to require that any displays or demonstrations be in "the regular course of business," but the statute does not say that. Pinnacle just had to present evidence that it "displayed or demonstrated [Splash's wines] for sale."

Reversed and remanded for further proceedings.

_____

of fact where none existed before." (cleaned up) (citation omitted)). So it wasn't a sham, and we consider it on appeal.